Plaintiff, Mrs. Florence Matranga, wife of Charles F. Kern, between 8:00 and 9:00 o'clock on the morning of Thursday, April 24, 1947, was visiting her husband, who was a patient in Mercy Hospital-Soniat Memorial, operated by defendant, Roman Catholic Sisters of Mercy.
Mr. Kern was, at the time of the alleged accident and resulting injury to his wife, convalescing from an operation. His bed was located in a ward designated as Little Flower Hall, which contained six beds.
Mr. Kern was operated upon in the afternoon of April 14, 1947, for an emergency appendectomy, and he was then confined in Bed No. 2 of said ward.
Plaintiff, Mrs. Kern, visited him every day up to the date of the occurrence. She charges that on April 24, 1947, there was a portable screen placed at the foot of Mr. Kern's bed, in order to facilitate the preservation of the patient's privacy; that she was first on the right side of her husband's bed, then moved around the foot, outside the screen, to the left side, conversed a short time with him there, and prepared to leave the ward; that she walked to the foot of the bed, intending to turn to her right to leave the ward, when she tripped on a heat tent which had been placed in the center aisle between the beds, and fell to the floor of the ward. Three beds were on each side of this aisle, and the foot of each bed extended to the aisle. Defendants, on the other hand, maintain that plaintiff tripped on the base of said portable screen that Mr. Kern's own private nurse had placed adjacent to his bed. Plaintiff further contends that she was not guilty of contributory negligence, and she seeks judgment against defendant, Roman Catholic Sisters of Mercy, and against its liability insurance carrier, New York Casualty Company, in the sum of $10,500. Mr. *Page 901 
Kern, plaintiff's husband, asks judgment in the sum of $137, representing moneys expended by him in connection with his wife's injuries.
In the court a qua, there was judgment in favor of defendants, dismissing plaintiffs' suit, and they have appealed.
Plaintiffs submit that the issues before us are as follows:
1. Was the fall of Mrs. Kern caused by the heat tent, left in the aisle by the nurse?
2. Did Mrs. Kern have an opportunity to see the heat tent, before she was trapped by it?
3. Was Mrs. Kern a trespasser or licensee, or was she an invitee?
The records shows that the heat tent is a mushroom-shaped frame covered with mesh wire. Its length is twenty-five inches, its base width is twenty-two inches, its height is seventeen inches. The portable screen is the standard pattern of portable hospital screens. It consists of a cloth curtain in a metal frame that stands on inverted U-shaped metal feet, with a space of nearly two feet between the ends of the arc or tips of the U. The tent and screen were filed in evidence herein.
Mr. Kern was confined to Bed No. 2 in the ward in which the alleged accident occurred. The beds were in a row and were numbered in categorical order, 1, 2, and 3. The patients were lying with their heads adjacent to the wall and their feet pointed toward the center of the room; and Beds Nos. 4, 5, and 6 were in a like row at the opposite side of the aisle of the room, and adjacent to Beds Nos. 1, 2, and 3. There was an open floor space, a center aisle, of eight feet, which existed between the feet of the beds hereinabove described. That eight-foot aisle or passageway extended the thirty-foot length of the ward from the entrance door, or corridor, to the outside wall, in which there were four large windows. The ward was well lighted when Mrs. Kern was injured.
The heat tent was used on the patient in Bed No. 5. That bed and Mr. Kern's bed were in apposition, with the aforesaid eight-foot aisle or passageway between them. The light in the heat tent annoyed Mr. Kern, so he had his own private nurse set the said screen at the foot of his bed to shield his eyes. There was also another screen placed at the right side of his bed. These two screens overlapped at the foot of the bed.
During the half-hour before Mrs. Kern's accident, a nurse had attended the patient in Bed No. 5 by bathing him, changing his bedclothes, and otherwise ministering unto his needs. She had removed the heat tent from the patient and placed it on the floor close to the foot of his bed. This is across the aisle from the foot of Mr. Kern's bed. It could have been on the floor at the foot of either Bed No. 4 or Bed No. 5.
The evidence further shows that Mrs. Kern stumbled at the foot of her husband's bed, Bed No. 2. She and her husband both testified to this, as did the witness Barrilleaux.
Plaintiff did not testify that the heat tent caused her fall. On the contrary, she stated that she had not seen the heat tent as she walked around the foot of her husband's bed from the right side to the left side thereof, where she stood a few moments before leaving him, and that she did not see the heat tent as she retraced her steps; that she did not see it at all until after she had fallen. The record shows that it was a conspicuous object on the open floor in a well lighted room.
Plaintiff further stated that she was looking straight ahead until she got to the foot of the bed and turned; that she could not say she was or was not looking to the front, as she ordinarily does when walking; that she could not say whether she was looking where she was walking; that she assumes that she fell over the heat tent, because it was right there after she fell, and there was nothing else on the floor she could have fallen on.
We believe that the evidence preponderates to the effect that Mrs. Kern was not walking as a reasonably prudent and observant person, and tripped on the base of the portable screen at the foot of Mr. Kern's bed; that she did not trip over the heat tent. This portable screen was apparent *Page 902 
to a reasonably prudent and observant person. The screen was where it had a right to be. When she fell, she fell forward over toward or upon the heat tent, and that is why she assumes that it was the cause of her fall.
Having concluded that Mrs. Kern fell or tripped over the base of the portable screen, we are of the opinion that the second issue raised by plaintiffs has also been answered.
Having answered the first and second issues raised by the plaintiffs, we do not feel it necessary to pass upon the third issue raised by the plaintiffs.
It is, therefore, ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellant.
Affirmed.
JANVIER, J., takes no part.