EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* LUIS ALBERTO BUSIGÓ CIFRE, acusado y apelante.

Número 15769.

*Sometido:* 2 de febrero de 1955.  *Resuelto:* 31 de marzo de 1955.

*Luisa María Capó* y *Yamil Galip Frangie,* abogados del apelante; *Hon. Secretario de Justicia José Trías Monge* y *Rafael L. Ydrach Yordán, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR SNYDER emitió la opinión del Tribunal.

Luis Alberto Busigó Cifre fué acusado ante el Tribunal Superior de una infracción al art. 328 del Código Penal, ed. de 1937.(1)   Se alega en la acusación que el día 26 de septiembre de 1952, mientras manejaba una camioneta de campaña (*jeep*) de Mayagüez a San Germán, el acusado "... ilegal, voluntaria, maliciosa y criminalmente sin guardar la

(1) El art. 328 dispone lo siguiente: "Todo conductor, maquinista, guardafreno, guardaguja, u otra persona encargada del todo o en parte de cualquier vagón, locomotora, tren de ferrocarril, automóvil o embarcación y cualquier despachador de trenes (*train dispatcher*), telegrafista, jefe de estación o cualquier otra persona encargada del todo o en parte del deber de despachar o dirigir los movimientos de dicho vagón, locomotora, tren de ferrocarril, automóvil o embarcación, que, por imprudencia temeraria o

debida prudencia, cuidado y circunspección, por negligencia temeraria y descuido, consistentes en guiar dicho vehículo de motor a una velocidad excesiva, dando zig-zags y sin tener en cuenta el ancho del puente Mirasol, que cruza el río Estero, en el sitio antes indicado, dejó chocar el referido jeep contra los muros de dicho puente, a consecuencia del cual choque se viró el jeep lanzando al agua . . . [a] Nathaniel Torres Lugo . . . lo cual ocasionó la muerte al referido Nathaniel Torres Lugo . . .". El acusado fué convicto ante el Tribunal Superior luego de un juicio en los méritos por tribunal de derecho. Contra la sentencia imponiéndole pena de 6 meses a 1 año de presidio ha entablado recurso de apelación.

■■ El primer señalamiento es que el tribunal sentenciador erró al permitirle al Pueblo que presentase prueba circunstancial del hecho de la muerte de Torres. Según el acusado, el art. 206 del Código Penal requiere prueba directa —no circunstancial—de ese hecho. ([2])

No hay controversia en cuanto a que solamente se presentó en el caso prueba circunstancial del hecho de la muerte de Torres. Por consiguiente debemos determinar si el art. 206 se aplica a un caso en que como en el presente se imputa una infracción del art. 328. El art. 206 de su faz dispone que el mismo es de aplicación a "asesinato u homicidio". En consecuencia este Tribunal no está autorizado mediante fíat judicial a extender sus disposiciones al diferente delito estatutario provisto por el art. 328.

descuido, lo dejase o hiciese chocar con otro vagón, locomotora, automóvil o embarcación, tren o cualquiera otro objeto o cosa, ocasionando de este modo la muerte de una persona, incurrirá en pena de presidio por un término máximo de cinco años.

"Si como consecuencia del choque resultase daño para alguna persona, dicho conductor, maquinista, guardafreno, guardaguja u otra persona, incurrirá en pena de cárcel por un término máximo de dos años, o multa máxima de mil dólares, o en ambas penas a discreción de la corte."

([2]) El art. 206 prescribe: "Ninguna persona podrá ser convicta de asesinato u homicidio, a menos que la muerte de la persona que se alegare haber sido muerta, y el hecho de la muerte que se alegare haber sido causada por el acusado, resultaren probados como actos independientes; aquélla por medio de pruebas directas y éste de modo que no haya lugar a duda razonable."

No podemos convenir con el acusado en que porque el art. 206 se aplique al delito de homicidio involuntario necesariamente debe aplicarse a delitos bajo el art. 328. Es innecesario volver a examinar nuestra afirmación en el caso de *Pueblo v. Lebrón*, 23 D.P.R. 658, en que descansa el acusado, al efecto de que el art. 203, referente a homicidio, y el art. 328 son "correlativos". Sea ello como fuere, habiendo dispuesto el art. 206 una excepción a la regla general en cuanto a la clase de prueba que puede aducirse para demostrar un hecho específico, esta excepción debe limitarse a aquellos casos expresamente provistos en el art. 206; v.g., asesinato y homicidio. Crawford, *Statutory Construction*, sec. 299, págs. 609–10.[3]

■■ El segundo señalamiento es que el tribunal sentenciador cometió error al concluir que Torres murió en la fecha y bajo las circunstancias alegadas en la acusación.

Teodoro Vázquez Romero—uno de los pasajeros de la camioneta—declaró que después del choque con el puente vió a un tal Egipciaco—otro de los pasajeros—tendido en la carretera; que el acusado salió del río con la ropa mojada; que no vió a Torres, pero como éste no aparecía, el empezó a gritar para el río "eh, eh" a ver si Torres respondía; que cuando el acusado salió del río, éste le dijo, "falta uno; falta mi mejor amigo" y quería tirarse al agua.

Diego Ortega, cabo de la policía, declaró que cuando investigó el accidente aquí envuelto en la madrugada del 26 de septiembre de 1952, encontró el puente destrozado y sangre en el sitio donde se había roto la baranda; que la camioneta estaba destrozada; que él, el Teniente Irizarry, y otros policías estuvieron toda la mañana buscando a Torres; que la búsqueda continuó durante dos o tres semanas, con la ayuda de los ingenieros del ejército; que éstos emplearon dinamita

---

[3] Notamos de paso que el art. 206 no tiene equivalencia en el Código Penal de California. Solamente otras tres jurisdicciones tienen estatutos similares a nuestro art. 206. Estos estatutos han sido severamente censurados por constituir una "condonación de todos los asesinatos" en los cuales el asesino ha tenido éxito en destruir el cadáver de su víctima. VII Wigmore, *Evidence*, tercera ed., sec. 2081, pág. 423.

para volar un vallado en el río a fin de facilitar la búsqueda; y que el acusado le dijo antes del amanecer del día del accidente que cuando chocó con el puente, la camioneta se viró y "lo botó a él y a Torres".

Las partes estipularon que Felipe Marchand González, fiscal de distrito de Mayagüez a la fecha del accidente, declararía que él, la policía y los ingenieros del ejército hicieron una búsqueda minuciosa aunque infructuosa del cadáver de Torres en el río Estero durante varios días después de que ocurriera el accidente; que emplearon buzos que bajaron al fondo del río, y que dinamitaron los vallados del río.

La señora madre de Torres declaró que para esa fecha su hijo y la esposa de éste vivían con ella; que desde el 26 de septiembre de 1952, no había visto a su hijo ni había recibido cartas de él así como tampoco ninguna noticia. La esposa de Torres declaró al mismo efecto. Añadió que Torres no acostumbraba dejarla sola; que se ausentó de su casa solamente "cuando estuvo en Corea"; que le escribió todos los días desde Corea; que "él era una locura" con el hijo mayor a quien no había visto desde el 25 de septiembre de 1952; y que nunca vió a su segundo hijo, que nació después del accidente.

Convenimos con el acusado en que el caso de *Caraballo* v. *Comisión Industrial*, 51 D.P.R. 161, que menciona el tribunal sentenciador en su discusión con el abogado del acusado sobre esta cuestión, no es estrictamente aplicable. El caso de *Caraballo* era uno civil en que la medida de prueba es diferente; además, era un caso de compensaciones a obreros, en que los tribunales son lo más liberales posibles al conceder compensación. No obstante, creemos que el tribunal sentenciador no cometió error al resolver a base del anterior testimonio que Torres murió en la fecha y bajo las circunstancias alegadas en la acusación.

El acusado alega, citando 26 Am. Jur. sec. 482, pág. 490 y VII Wigmore, supra, sec. 2081, que aun en las jurisdicciones donde se permite probar el hecho de la muerte mediante

evidencia circunstancial, dicha prueba debe ser de tal naturaleza que excluya cualquier otra conclusión razonable. Hemos revocado los casos nuestros que sentaban tal regla sobre la cuestión de evidencia circunstancial en general. *Pueblo* v. *Bonilla*, ante pág. 152. No vemos razón para una regla diferente en cuanto a la cuestión específica del hecho de la muerte. En ambos casos la norma adecuada es si el juzgador de hechos queda convencido más allá de duda razonable.

Además, aun bajo la norma sostenida por el acusado, el testimonio justificaba la conclusión a que llegó el tribunal sentenciador sobre este punto.(4) Opinamos que el tribunal sentenciador tenía derecho a concluir que Torres murió a consecuencia del impacto recibido contra el puente o ahogado. No encontramos base razonable para decir, como arguye el acusado, que la evidencia ". . . no excluye la posibilidad lógica de que en algún momento la relación de causa y efecto entre la alegada negligencia criminal del acusado y la presunta muerte de dicho Nathaniel Torres Lugo fuese cortada por cualquier otro factor interventor de los muchos que en el curso corriente de las experiencias humanas suelen ocurrir." El acusado no señala tal factor interventor razonablemente posible bajo las circunstancias de este caso y ninguno encontramos en los autos.

Seguidamente sostiene el acusado que el tribunal sentenciador cometió error al denegar su moción de absolución perentoria y al declararlo culpable fuera de duda razonable. Toda vez que el acusado no presentó prueba, consideraremos estas dos cuestiones conjuntamente.

El Fiscal de este Tribunal correctamente resume la prueba del Pueblo como tendente a demostrar que en la noche en cuestión, acompañado por Vázquez Romero, por Torres y por otra persona, el acusado "conducía un...'jeep' por la carretera que conduce de Cabo Rojo a San Germán (T.E. 79); que al llegar al río Estero, el 'jeep' 'se le fué' a Busigó y chocó el puente (T.E. 36–37 y 67); que el vehículo 'salió de atrás',

---

(4) El propio acusado, en la declaración jurada que prestó ante el fiscal el día del accidente, declaró que vió a Torres caer al río crecido ahogándose.

'dió una vuelta y se viró' y lanzó a Busigó y sus acompañantes (T.E. 80) ; que el puente se encuentra en medio de dos curvas, es estrecho y no caben dos carros (T.E. 79) ; que como resultado del choque el puente quedó destruído en su parte derecha (T.E. 57) y el vehículo destrozado y la capota rota (T.E. 57–8) ." El Pueblo también presentó en evidencia fotografías de las que surgía el daño causado al puente y la destrucción de la baranda como resultado del choque.

Al confirmar una sentencia condenatoria bajo el art. 328 en el caso de *Pueblo* v. *Rivera*, 69 D.P.R. 538, establecimos dos principios que nos sirven de guía aquí. Primeramente—La velocidad excesiva, según se dice a la pág. 543, puede establecerse por las consecuencias del impacto cuando ocurre un choque automovilístico. En segundo lugar—"Prueba relativa a la fuerza del impacto de una colisión puede, *por sí sola*, o en relación con otras circunstancias, tener suficiente peso para justificar la conclusión de que hubo negligencia en cuanto a la velocidad del vehículo." *Pueblo* v. *Rivera*, supra, pág. 543. (Bastardillas nuestras.)

Es cierto que bajo el art. 328 la negligencia temeraria o descuido deben establecerse más bien que la falta ordinaria de cuidado. *Pueblo* v. *López*, 77 D.P.R. 607, escolio 4. Pero la prueba en el caso de autos cumple con este requisito. La velocidad a que corría la camioneta—según se desprende del impacto del choque y de sus resultados—la posición en que quedó el vehículo después del accidente, y la manera en que el apelante y Torres fueron lanzados de la camioneta al río justifican la condena del acusado bajo el art. 328. En el caso de *Pueblo* v. *Rodríguez*, 70 D.P.R. 23, resolvimos que la evidencia era suficiente para justificar una sentencia condenatoria bajo hechos algo similares. Véanse *Pueblo* v. *Piñeiro*, 77 D.P.R. 531; *Pueblo* v. *Bastián*, 71 D.P.R. 843; *Pueblo* v. *Pagán*, 49 D.P.R. 436.

▇▇▇▇▇ Finalmente, el acusado se queja de la actuación del tribunal sentenciador al declarar sin lugar su moción radicada con posterioridad a ser convicto, en la cual solicitaba

en la alternativa un nuevo juicio o la reapertura del caso para presentar prueba. Éste no apeló de la resolución en tanto en cuanto ésta le denegó un nuevo juicio. Por tanto tampoco la podemos considerar. *Pueblo* v. *Serbiá*, 75 D.P.R. 394.

La referida resolución, en tanto en cuanto se negó a reabrir el caso, tampoco está ante nos ya que el tribunal sentenciador se negó a incluirla en los autos ". . . por no ser parte de la sentencia apelada". El acusado ha adherido a su alegato la moción y las declaraciones juradas en apoyo de la misma. Pero esto desde luego no hace que los documentos pasen a ser parte de los autos en apelación. Toda vez que el acusado no dió los pasos necesarios para incluir estos documentos en los autos en apelación, la cuestión sobre la reapertura del caso no está ante nos. De cualquier modo, tal actuación descansaba en la discreción del tribunal sentenciador y el acusado tendría que demostrarnos que dicho tribunal abusó de ella.

*La sentencia del Tribunal Superior será confirmada.*

El Juez Asociado Sr. Belaval disintió.

### RESOLUCIÓN

San Juan, Puerto Rico a 7 de junio de 1955

Aun cuando el Tribunal se adhiere a los principios de derecho expuestos en su opinión en este caso, consideradas las circunstancias surgentes de los autos respecto a los hechos, se deja sin efecto la sentencia de este Tribunal de fecha 31 de marzo de 1955, se revoca la sentencia apelada que dictó el Tribunal Superior de Puerto Rico, Sala de Mayagüez, en 14 de diciembre de 1953, y se devuelve el caso a dicho tribunal para la celebración de un nuevo juicio.

Lo acordó el Tribunal y firma el Sr. Juez Presidente. El Juez Asociado Sr. Belaval no intervino.

A. C. SNYDER,
*Juez Presidente*

Certifico:

IGNACIO RIVERA,
*Secretario.*