**Dorothy Milam JERNIGAN, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY,**
Appellee.

No. 17582.

United States Court of Appeals
Fifth Circuit.

Aug. 12, 1959.

Louis B. Graham, New Orleans, La., for appellant.

F. Carter Johnson, Jr., New Orleans, La., Porteous & Johnson, New Orleans, La., for plaintiff-appellee.

Before RIVES, Chief Judge, and CAMERON and JONES, Circuit Judges.

CAMERON, Circuit Judge.

Appellee, Allstate Insurance Company, brought this action in the lower court seeking declaratory judgment that it was not liable under its automobile liability policy issued to William B. Reites, insured, for the death of Mack Franklin Jernigan and damage to his automobile, on the ground that Beatrice Adams, insured's aunt operating the automobile covered by said policy, intentionally and willfully drove said automobile over said Jernigan, inflicting the injuries from which he died. The court below, sitting without jury and trying the case upon a written stipulation of facts, entered judgment in favor of appellee upon the grounds charged in the complaint and dismissed on the same grounds the counterclaim of appellant Dorothy Milam Jernigan, widow and sole survivor and beneficiary of decedent, claiming damages for the death of said Jernigan and damages to his automobile.

The question presented by the appeal is whether the occurrence resulting in Jernigan's death and damage to his car was an accident under the terms of the policy introduced in evidence in the court below. The findings of fact based upon the stipulation of the parties embraced these salient facts:

That insurer issued to insured an automobile liability policy covering his Chevrolet automobile, agreeing to pay all sums insured should become obligated to pay for personal injuries sustained by any person caused by accident, which policy was extended to cover those using the automobile with insured's permission and included assaults as accidents if not committed by or at the direction of the insured;[1] that insured permitted his aunt, Beatrice Adams, a licensed and registered driver, to drive said car at the time and place of the injuries involved without knowledge that she was under any mental stress or infirmities;

[1.] The following are the pertinent provisions of the policy:

"Insuring Agreements

"I Coverage A—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * * including death at any time resulting therefrom, sustained by any person, caused by accident, and arising out of the ownership, maintenance or use of the automobile.

"Coverage B—Property Damage Liability [same language as above.]

"V Definition of Insured.

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and * * * any person while using the automobile * * * with the permission of [insured] * * *

"Conditions Applicable to Coverages A, B and C

*  *  *  *  *

"Assault and Battery—Coverages A and B. Assault and battery shall be deemed an accident unless committed by or at the direction of the insured."

that said aunt deliberately and maliciously drove the automobile against Jernigan, and operated it back and forth over his prostrate body inflicting injuries resulting in his death, and damage to his automobile to the extent of $498.70; that appellant had the sole and exclusive right of action for the death of said Jernigan, and as administratrix of his estate for collection of the property damage; that a lunacy commission had been appointed at the request of her attorneys, which upon inquiry found that said aunt was legally insane under the McNaghten formula, for the purpose of considering her criminal responsibility for the acts committed.

The court below concluded as a matter of law that said Beatrice Adams deliberately and intentionally drove the automobile over the body of said Jernigan, inflicting injuries resulting in his death, and that said injuries were not caused by accident within the terms of the policy, and that, therefore, appellee was entitled to the judgment it prayed for and that appellant's counterclaim should be dismissed.

This appeal challenges the correctness of that conclusion, presenting to us a question of law upon which the courts of Louisiana have not passed directly. We have concluded that, under the general law which the courts of Louisiana would probably follow, the injury and property damage were caused by accident, and that the court erred in reaching the conclusions above stated.

The question of law before us is, therefore, whether an assault comes within the coverage of the policy as being bodily injury "caused by accident." Where, as here, the question involves the deliberate commission of assault, the definition of the term "accident" is, under most decisions, arrived at by deciding whether the occurrence is viewed from the standpoint of the person committing the assault or that of the injured person. The cases dealing with this question are collected in a note beginning at page 1019 of 33 A.L.R.2d. The general rule distilled from these cases by the author of the note is thus stated.[2]

"It is apparently the more widely accepted view that an assault constitutes an 'accident,' and that injuries therefrom are 'accidentally sustained,' within the coverage of liability insurance policies. * * *

"The determination whether an assault constitutes an 'accident' appears to depend on the person from whose standpoint the court views the occurrence. Thus, courts which have come to the conclusion that it is an 'accident' look at it from the view of the injured party, while those reaching a contrary view look at it from the standpoint of the aggressor, the person making the assault."[3]

This majority rule lists cases from fourteen states supporting it and seven

2. 33 A.L.R.2d at pages 1030–1031.

3. The court below cited in support of its decision seven cases: Thomason, Contractors v. United States Fidelity & Guaranty Company, 5 Cir., 1957, 248 F. 2d 417; Farm Bureau Mutual Automobile Insurance Co. v. Hammer, 4 Cir., 177 F.2d 793, certiorari denied Beverage v. Farm Bureau Mutual Auto. Ins. Co., 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1389; Commonwealth Casualty Co. v. Headers, 118 Ohio St. 429, 161 N.E. 278; Sontag v. Galer, 279 Mass. 309, 181 N.E. 182; Jackson v. Maryland Casualty Co., 212 N.C. 546, 193 S.E. 703; Anton v. Fidelity & Casualty Co. of New York, 117 Vt. 300, 91 A.2d 697, and Weis v. State Farm Mutual Automobile Insurance Co., 242 Minn. 141, 64 N.W.2d 366, 49 A.L.R.2d 688.

Most of these cases are cited in the annotation as announcing the minority rule, see 33 A.L.R.2d at page 1034. Of those not so cited in the annotation, we think it ought to be pointed out that the Thomason case decided by this Court is not considered apposite, construing as it does the law as established by Alabama cases and involving, not an assault, but an innocent trespass committed by the operator of a bulldozer who destroyed some trees and other growth because of his mistaken idea as to where the true land line lay. The dissent of Judge Rives on rehearing mentions the annotation and several of the cases dealt with in it.

states taking the minority view.[4] Probably the oldest and most cited case is Georgia Casualty Co. v. Alden Mills, 1930, 156 Miss. 853, 127 So. 555, 73 A.L.R. 408, Examination of Shepard's Citations shows that this case has been cited twenty-nine times and that it has been followed in all sections of the country. The insurance policy there involved contained no mention of assaults, so that the establishment by that case and others of similar vintage of the legal principle that an unprovoked assault is an accident was not aided by any policy provisions.

A decision of this Court applying Mississippi law is listed in the annotation as supporting the majority view and it covers several of the questions with which we are dealing here, Western Casualty & Surety Co. v. Aponaug Manufacturing Co., 5 Cir., 1952, 197 F.2d 673. The named assured there was Aponaug Manufacturing Co., and recovery by the Company of damages it had paid the injured party was upheld in a suit against the insurer growing out of an assault committed by Aponaug's president who was classified as an insured under the policy definition of "Insured". Both the Definitions Clause and the Assault Clause were in substantially the same words as those of the policy now before us. Some of the language of that decision is applicable here:[5]

> "The law is settled in Mississippi that a person who has been assaulted and injured by another, without any provocation on his part, has suffered an accidental injury. * * *

> "The definition of the word 'insured' so as to include persons oth-

er than the named insured was intended to extend and had the effect of extending the coverage of the policy to such other persons. Unless the intention of the parties is otherwise clear, that definition should not be construed so as to restrict or limit the coverage enjoyed by the named insured. Further, that definition is of 'the *unqualified* word "insured"'.

> "As to the 'condition' of the policy specifically dealing with assault and battery, it is clear that when construed according to the Mississippi law, an assault by an agent, not provoked by the party assaulted, would come within the protection of the policy covering injuries caused by accident, unless specifically excluded therefrom. Does the qualifying clause 'unless committed by or at the direction of the Insured' amount to such an exclusion? The reasonable construction of that clause, it seems to us, is that it was inserted out of deference to the question of public policy involved in insurance indemnifying against an insured's willful act."

As stated, neither the court below nor the litigants here have cited any Louisiana cases in point. In deciding, as we must, what the law of Louisiana is, we see no reason, on principle or otherwise, to reject the majority view. Indeed, the State of Louisiana, through the Direct Action Statute, 15A L.S.A. Revised Statutes 22:655, and its court decisions [6] has demonstrated an unusual liberality in favor of its injured citizens in their

---

4. An examination of several of the cases cited to the minority view reveals that the assault was committed by the named assured, which removes those cases from conflict with the majority doctrine. To this group belongs Farm Bureau Mutual Automobile Insurance Co. v. Hammer, 4 Cir., 1949, 177 F.2d 793, certiorari denied Beverage v. Farm Bureau Mutual Auto. Ins. Co., 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1389, the case so heavily leaned upon by appellee.

5. 197 F.2d at page 674.

6. West v. Monroe Bakery, 1950, 217 La. 189, 46 So.2d 122; Chapman v. Travelers Indemnity Co., La.App.1950, 45 So.2d 557; Kern v. New York Casualty Co., La. App.1949, 42 So.2d 900; Lusk v. United States Fidelity & Guaranty Co., La.App. 1941, 199 So. 666; Brooks v. Bass, La. App., 184 So. 222; and cf. Lumbermen's Mutual Casualty Co. v. Elbert, 1955, 348 U.S. 48, 75 S.Ct. 151, 99 L.Ed. 59; Continental Casualty Co. v. Quebedeaux, 5 Cir., 1956, 234 F.2d 241, and Lewis v. Manufacturers Casualty Ins. Co., D.C. W.D.La.1952, 107 F.Supp. 465, 471, and the cases cited therein.

claims against insurance carriers growing out of torts committed in the state. We hold, therefore, that viewed from the standpoint of the injured party, the fatal injury sued on and the property damage were the result of an accident within the meaning of the policy before us.

The same reasoning and the same authorities lead to the holding that the policy's protection is not canceled by the condition inserted in it specifically extending the coverage to an assault. Without this extension of coverage to include assault, the policy would, under the law, give protection where one is assaulted without provocation. The inclusion of an assault is an accident by specific provision in the policy will not be construed so as to eliminate coverage already provided by law.

Such a construction was rejected by us in Aponaug. Our holding there that excluding the insured from those whose assaults would be protected referred only to the named insured and was based upon the idea that some courts hold that it is against public policy for a person to obtain insurance which provides indemnity against his own willful act.

The only Louisiana case called to our attention supports this conclusion without qualification, Barringer v. Employer's Mutual Liability Insurance Co., La. App. 2 Cir., 1952, 62 So.2d 173, 177: "Defendant contends that though the policy expressly provides 'assault and battery shall be deemed an accident unless committed by or at the direction of the insured' the definition of 'insured' contained in the policy includes the operator of the vehicle, namely an employee, such as Sims in this instance, with the result the operator as well as the insured comes within the exclusion. We reason as did the judge a quo that the clause is in the nature of an omnibus clause, however, we think that the limitation 'unless committed by or at the direction of the insured' refers only to *the named insured*. To otherwise hold would be to render this clause completely ineffective, an end surely not intended by the parties thereto."

We assume, as is argued, that this statement was not necessary to the decision of the case before the Court of Appeal of Louisiana. We think nevertheless that it states the general law as established by the majority of the cases, and it gives assurance, at least, that Louisiana is not aligned against the majority.

From the foregoing it results that the court below erred in declaring that the policy did not cover the fatal injury to the decedent and the property damage, and in dismissing the counterclaim of appellant. The judgment is therefore reversed and the cause remanded with direction to dismiss the complaint with prejudice and to render judgment in favor of appellant and against appellee in accordance with the holdings of this opinion.

Reversed and remanded.