Susan GALLAGHER, Maureen Marino, Nancy Loftus, Edward R. Gallagher, Jr., John T. Gallagher, Paul T. Gallagher, Marybeth Knox, Colleen Gosselin, Theresa A. Josephson, Plaintiffs,

v.

PARK WEST BANK AND TRUST CO., Defendant,

v.

Carol A. GALLAGHER, Third–Party Defendant.

Civil Action No. 94–30239–MAP.

United States District Court, D. Massachusetts.

Jan. 10, 1997.

Gallagher, Paul T. Gallagher, Marybeth Knox, Colleen Gosselin, Theresa A. Josephson.

Samuel A. Marsella, Doherty, Wallace, Pillsbury & Murphy, Springfield, MA, for Park West Bank and Trust Company.

Lawrence R. Ehrhard, Springfield, MA, for Carol A. Gallagher.

*MEMORANDUM REGARDING PLAINTIFFS' MOTIONS FOR ATTORNEY'S FEES, PREJUDGMENT INTEREST, AND FINAL JUDGMENT*

PONSOR, District Judge.

## I. INTRODUCTION

This lawsuit arises out of defendant Park West Bank & Trust Co.'s ("Park West") administration of Edward Gallagher's estate. In an earlier decision, this court allowed the motion of plaintiffs (Gallagher's nine children from his first marriage) for summary judgment against Park West for its improper distribution of all the proceeds of Edward Gallagher's pension benefit plan to his second wife, Carol A. Gallagher, the third-party defendant ("Mrs. Gallagher").[1] Plaintiffs have now filed motions seeking attorney's fees, prejudgment interest, and entry of separate judgment pursuant to Rule 54(b).

## II. FACTUAL AND PROCEDURAL HISTORY

On November 15, 1971, Edward R. Gallagher executed a trust ("the 1971 trust"), naming Park West as trustee and the plaintiffs as beneficiaries. In 1978 Gallagher established a pension benefit plan ("the 1978 plan") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., amended by Retirement Equity Act of 1984 ("REA"), 29 U.S.C. §§ 1052–1056. As with the 1971 trust, the 1978 plan named Park West as trustee and provided that, in the event of Gallagher's death, the plan's entire value would be distributed to his beneficiaries. Later in 1978,

Kevin J. Loftus, East Longmeadow, MA, for Susan Gallagher, Maureen Marino, Nancy Loftus, Edward R. Gallagher, John F.

1. In granting plaintiffs' motion for summary judgment, this court determined that Edward Gallagher's estate was subject to the Retirement Equity Act of 1984, 29 U.S.C. §§ 1052–1056, which amends the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq.

Gallagher named Park West, in its capacity as trustee of the 1971 Trust, as beneficiary of the 1978 plan. From 1978 until 1988, Gallagher made contributions to the pension plan. As a result, at the time of his death in March of 1991, the plan was worth over $170,000.

In January 1991, Gallagher amended the 1971 trust, designating the third-party defendant, Mrs. Gallagher, as a fifty percent beneficiary. Plaintiffs, together, were named the beneficiaries of the remaining fifty percent of the 1971 trust. On March 22, 1991, Edward Gallagher died.

Mrs. Gallagher subsequently applied to Park West for benefits from her late husband's pension plan. Shortly thereafter, Park West distributed to her the *entire* accumulation of the plan, which as noted was approximately $170,000. Over a year later, Park West notified plaintiffs that the proceeds of the plan had been distributed to Mrs. Gallagher in their entirety. Plaintiffs immediately demanded payment of their fifty percent of the pension plan proceeds. In response, Park West assured plaintiffs, incorrectly, that the plan's entire proceeds were properly distributed to Mrs. Gallagher.

In 1994, plaintiffs filed suit against Park West alleging, among other things, that Park West breached its fiduciary duty to Edward Gallagher by the wrongful distribution of the plan's proceeds. Park West subsequently filed a third-party complaint against Mrs. Gallagher seeking recovery of any portion of the $170,000 improperly distributed to her.

On March 27, 1996, as noted above, this court granted plaintiffs' motion for summary judgment, finding that defendants committed a breach of fiduciary duty as a matter of law in distributing the entire $170,000 to Mrs. Gallagher.

In granting plaintiffs' motion for summary judgment, this court adopted Magistrate Judge Kenneth P. Neiman's Report and Recommendation to the effect that Park West, as beneficiary of the 1978 plan, was liable for the improper distribution of Edward Gallagher's estate. The court agreed that the language of the 1978 plan, viewed alongside the provisions of the Retirement Equity Act, required an even distribution of the retirement plan's benefits between Mrs. Gallagher and the 1971 trust. The 1971 trust, in turn, was then to be divided evenly between plaintiffs and Mrs. Gallagher. The result of these calculations was that Mrs. Gallagher was entitled to 75% (50% from the 1978 plan and 50% from the 1971 trust), while the plaintiffs were entitled to 25% of the total proceeds.

Plaintiffs now move for attorney's fees, prejudgment interest, and separate judgment pursuant to Rule 54(b).

### III. *MOTION FOR ATTORNEY'S FEES*

Plaintiffs seek reasonable attorney's fees for services performed by counsel since April 18, 1992. Affidavits submitted by plaintiffs' attorney state that he has expended 165.5 hours at an hourly rate of $135.00, for a total of $22,342.50.

It is undisputed that attorney's fees may be awarded under an ERISA claim, pursuant to 29 U.S.C. § 1132(g):

> In any action under this subchapter ..., the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.

Counsel fees in ERISA cases are not mandatory, but are within the trial court's discretion. *Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 100 F.3d 220, 225 (1st Cir.1996). The First Circuit has set down a five-factor analysis for determining whether a court should grant a motion for attorney's fees in an ERISA case. *See Gray v. New England Tel. and Tel. Co.,* 792 F.2d 251 (1st Cir.1986). The *Gray* court listed the following factors:

(1) The losing party's degree of culpability or bad faith;

(2) The losing party's ability to satisfy an award of fees;

(3) Whether such an award would deter others from acting under similar circumstances;

(4) The amount of benefit that the action had on the members of the pension plan; and

(5) The relative merits of the parties' positions.

*Gray,* 792 F.2d at 257–58. This test is a flexible one, "developed to ... give guidance to courts in interpreting the discretion to be exercised under the statute." *Id.,* at 258. A court need not consider all the factors, and no one factor is necessarily determinative. *Id.*

In determining whether to allow attorney's fees under ERISA, the court should consider that "ERISA was enacted 'to promote the interests of employees benefit plans' ... and 'to protect contractually defined benefits.'" *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) (citations omitted). With this, the court will now consider each of the five factors established under *Gray.*

### A. *Defendant's Degree of Culpability or Bad Faith*

■ Plaintiffs allege that defendant failed to amend Edward Gallagher's pension benefit plan as the REA required and, because of this negligence or malfeasance, blatantly failed to perform its fiduciary responsibilities. Plaintiffs further maintain that defendant was obligated to notify Gallagher of the REA amendments to ERISA and Internal Revenue Code section 401(a), which required amendments to pension plans in order to maintain their special tax qualifications. In addition, 26 U.S.C. § 417(a)(3) and 29 U.S.C. § 1055(c)(3) required plan providers, such as Park West, to explain the qualified pre-retirement survivor annuity ("QPSA") to each participant, so that he or she could take appropriate action. The parties provided evidence demonstrating that Park West received a series of letters from the Internal Revenue Service concerning its obligation to notify plan members of these changes. *See* Plaintiffs' Exhibit S; Defendant's Exhibits 2, 4, and 6.

Notwithstanding notice of such requirements, defendant never attempted to notify or explain these new conditions to Gallagher. As a result, the ambiguity of Gallagher's unamended plan led directly to this litigation. As plaintiffs have noted, this entire dispute may have been resolved if defendant had only notified Edward Gallagher of the necessary changes that he needed to make in order to render his intentions clear.

Plaintiffs take their argument one step further, however, and allege that the defense raised by defendant—that Gallagher's pension plan had been amended properly—could not have been made in good faith. While this court agrees that Park West was culpable to the extent that it negligently or recklessly failed to amend Gallagher's pension plan pursuant to the new rules, the court cannot conclude that defendant acted in bad faith.

Throughout this litigation Park West has presented a colorable argument as to the scope and effect of the REA's amendments to ERISA, as well as the manner in which it distributed the pension plan proceeds. Park West did not manifest bad faith, but only a misunderstanding of the correct legal standard and its application to this particular plan. While Park West *was* grossly negligent, it did not engage in intentional misconduct. In sum, this factor does favor plaintiffs, but not to the extent plaintiffs suggest.

### B. *Defendant's Ability to Satisfy an Award of Fees*

No doubt exists that a commercial establishment, in the business of administering pension plans, has the resources to pay the attorney's fees incurred by its own mishandling of funds entrusted to it. Defendant has suggested nothing to the contrary.

### C. *The Likelihood of Deterring Other Persons Acting Similarly*

Defendant is obligated to follow applicable guidelines and statutes competently, so that retirement plans maintain their qualified status. Granting attorney's fees to a beneficiary of such a trust, in an action against a trustee for failing to administer the instrument properly, is a reasonable and sound method for deterring such behavior in the industry.

Defendant's conduct in distributing the proceeds without making sufficient inquiries as to the designated beneficiaries is exactly the type of behavior that courts *should* deter. As plaintiffs have noted, once defendant

made the improper distribution, the chances of settlement without litigation were greatly diminished. This factor clearly favors the plaintiffs.

### D. The Action's Benefit to Members of the Pension Plan

Awarding fees would benefit the innocent plaintiffs here and deter neglect of other plan members who are similarly situated. Other than this, the court cannot conclude that the suit confers a benefit on plan members generally. This factor is neutral.

### E. The Relative Merits of the Parties' Positions

This court has already held, in granting plaintiffs' motion for summary judgment, that defendant's 100% distribution of the 1978 plan to Mrs. Gallagher was improper, and that plaintiffs were entitled to 25% of those proceeds. While, as the court noted, the bank's legal position was colorable, it was weak. Beyond this, it was highly imprudent, to say the least, to distribute the funds to Mrs. Gallagher without notifying the children. Moreover, it was misleading to claim that the distribution was, in fact, proper. A bank that wrongly distributes the proceeds of a decedent's estate should, in fairness, pay the reasonable attorney's fees for litigation necessitated by its lack of competence.

Viewing all these factors together, the court finds that plaintiffs are entitled to fees, and the court will award them.

### IV. MOTION FOR PREJUDGMENT INTEREST

■ The award of prejudgment interest is also discretionary. Although ERISA does not explicitly provide for prejudgment interest, widespread support exists for such an award. See West Virginia v. United States, 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987); Biggins v. Hazen Paper Co., 953 F.2d 1405 (1st Cir.1992); Conway v. Electro Switch Corp., 825 F.2d 593 (1st Cir.1987). In West Virginia, a unanimous Supreme Court found that prejudgment interest in an ERISA case was an element of complete compensation left to the discretion of the district court. 479 U.S. at 310, 107 S.Ct. at

706. While the Seventh Circuit has gone so far as to proclaim prejudgment interest as presumptively available to claimants under ERISA, the First Circuit has refused to go that far. See Biggins, 953 F.2d at 1426–27.

■ The award of prejudgment interest compensates the wronged party for the loss of use of the improperly delayed payment. An award of prejudgment interest also prevents unjust enrichment to the breaching party. See Foltz v. U.S. News & World Report, Inc., 613 F.Supp. 634, 648 (D.C.D.C. 1985) ("An award can be seen as a means to transfer to the prevailing party the gain the losing party realized, or could have realized, from the use of the money during the relevant time period.")

This court will allow the motion for prejudgment interest for the time prior to the filing of this lawsuit.

### Interest Rate

■ Where a claim for prejudgment interest arises out of a federal statute, federal law governs as to the applicable interest rate. Colon Velez v. Puerto Rico Marine Management, Inc., 957 F.2d 933, 941 (1st Cir.1992). Where federal law is silent as to the interest rate, as it is in ERISA cases, the court may look to state law to set the proper rate. Id.

■ This court will adopt the 12 percent rate of Mass.Gen.L. ch. 231, § 6C. As plaintiffs have argued, it would be inequitable for a breach of an obligation to pay funds owed under a pension contract in Massachusetts to generate less interest than a breach of a simple contract. While a federal interest rate may be used, the court has the discretion to apply the state rate. Cottrill, 100 F.3d at 224. Applying the higher rate is fairer, particularly given that the court's denial of Rule 54(b) certification may result in delay of payment.

### V. MOTION FOR PARTIAL JUDGMENT

Rule 54(b) states:

When more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may

direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed.R.Civ.P. 54(b).

This rule recognizes that in certain limited instances a party may appeal a final decision on one particular claim before a final decision on all of the claims in a case has been reached. *See Consolidated Rail Corp. v. Fore River Ry. Co.,* 861 F.2d 322, 325 (1st Cir.1988). The practical result of a Rule 54(b) certification is to grant a final decision under 28 U.S.C. § 1291. This "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *State Street Bank & Trust Co. v. Brockrim, Inc.,* 87 F.3d 1487 (1st Cir.1996) (quoting *Digital Equipment Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 867, 114 S.Ct. 1992, 1995, 128 L.Ed.2d 842 (1994)).

■ A certification pursuant to Rule 54(b) is inappropriate except where the trial court's ruling disposes completely of all claims against a given defendant (or a discrete set of claims against defendants generally), where the overlap among various legal and factual issues is minimal and where the equities strongly favor immediate, partial judgment. The Court of Appeals will not hesitate to dismiss an appeal where these requirements have not been strictly observed. *Nichols v. The Cadle Co.,* 101 F.3d 1448 (1st Cir.1996); *Credit Francais Int'l, S.A. v. Bio–Vita, Ltd.,* 78 F.3d 698, 706 (1st Cir.1996).

■ Here, what remains is the third-party claim of Park West against Carol Gallagher to recover the monies erroneously distributed to her. While the legal issues driving this claim are, to some extent, distinct from the issues in the primary suit, the factual issues are identical. An appeal of the partial judgment plaintiffs now seek, and a subsequent appeal of the ultimate decision on the third-party claim, would unfairly saddle the Court of Appeals with the task of addressing the same factual scenario twice. Moreover, the award of counsel fees and generous interest eliminates any compelling argument for entry of partial judgment, tipping the balance of equities away from certification.

## VI. *CONCLUSION*

For the foregoing reasons this court holds that plaintiffs' Motion for Attorney's Fees and Motion for Prejudgment Interest are hereby ALLOWED and plaintiffs' Motion for Final Judgment is hereby DENIED.