**Hilda CHINEA, et al., Plaintiffs,**

v.

**CONTINENTAL CASUALTY COMPANY, et al., Defendants.**

**Civil No. 95–2544(DRD).**

United States District Court, D. Puerto Rico.

Sept. 30, 1997.

Hilda Chinea, pro se.

Alex Gonzalez, Old San Juan, PR, Jose E. Colon–Santana, Hato Rey, PR, for Defendant Continental Cas. Co.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

### I. INTRODUCTION

This ERISA dispute arises from the disappearance of Orlando Canales on July 24, 1986. Plaintiffs are the named beneficiaries of a life insurance policy that was in effect when Canales disappeared and Defendants are the underwriters of said policy. The issue is whether or not Defendants correctly denied Plaintiffs' insurance claim on the basis that Plaintiffs failed to establish Canales's accidental death. The court holds that Defendants erred in denying Plaintiffs' claim and that Plaintiffs are entitled to collect the principal sum under the policy and prejudgment interest. The court temporarily stays its hand as to attorneys' fees.

### II. BACKGROUND

In accordance with the standard for summary judgment, the following are the facts not in controversy.

Canales was an employee of Wang Laboratories, Inc. and received, as an employee benefit, coverage under the Accidental Death and Dismemberment Policy issued by Defendants. The policy provides a principal sum of $200,000 if Canales dies due to an injury, defining "injury" as "bodily injury caused by an accident occurring while this policy is in force." Further, Part IV of the policy states:

> If an Insured Person is not found within one year after the date of the disappearance, sinking or wrecking of a conveyance in which the Insured Person was riding at the time of the accident and under the circumstances as would otherwise be covered hereunder, it will be presumed that the Insured Person suffered loss of life resulting from bodily injury caused by the accident.

The night of July 23, 1986, Canales was working late because he was leaving on a family trip the following day. He finally left the office, located at the Scotiabank Building in Hato Rey, at approximately 4:40 A.M., July 24. The security guard at the office building's parking lot saw him leave at that time and no one has seen him since.

Later that morning, the Puerto Rico Police Department ("PRPD") began to investigate an automobile accident that occurred at 7:45 A.M. in Puerto de Tierra involving Canales's automobile. The driver had caused the accident, at which time two unidentified individuals abandoned the vehicle and fled the scene. The PRPD found some of Canales's belongings in the vehicle, including his wallet. At this stage, the PRPD believed that Canales had been the victim of a kidnapping and that the unidentified persons had taken and were using Canales's automobile.

After further investigation, the PRPD also found gunpowder on the passenger's door, showing that somebody had fired a gun outward from the passenger's seat. Further, the automobile's undercarriage had mud and humid vegetation attached to it, as if somebody had driven the vehicle off-road.

The PRPD pursued an exhaustive search for Canales, which the local media followed closely. Unfortunately, it was not successful and, even though the case became notorious, nobody came forward with any information. Further, Canales never used the plane ticket and visa which he had acquired for the family trip that he was to take the morning of his disappearance. His mother, wife, ex-wife and daughter have not received any communication from Canales since his disappearance, even though he had a very close relationship with each of them. Moreover, Canales did not have any mental health problems, was not addicted to any controlled substances and did not have a mortal illness. There was no reason to believe that his dis-

appearance had been conscious, premeditated or voluntary.

Pursuant to this evidence, PRPD Detective Félix López, experienced in homicide investigations since 1966, concluded that Canales died on the day of his disappearance.

Approximately eight years later, Plaintiffs—the named beneficiaries in the life insurance policy—filed for an *ex parte* declaratory judgment in the Superior Court for the Commonwealth of Puerto Rico to certify Canales's death. By judgment dated December 13, 1994, following Puerto Rico law, 31 P.R. Laws Ann., tit. 31 § 164, as well as Puerto Rico Supreme Court precedent in *Pueblo v. Busigó*, 78 P.R. Dec. 162 (1955) and *Caraballo v. Comisión Industrial*, 51 P.R. Dec. 161 (1937), the Puerto Rico court determined that Canales died on the date of his disappearance as a victim of a car-jacking. The court stated: "Mr. Orlando Canales disappeared as a consequence of the criminal wave that hits the streets of Puerto Rico in the manner of the modern felony known as 'car-jacking' with the aggravating circumstance of having lost his life." *Ex parte Chinea*, Case No. KAC 93–1871(803) (P.R. Superior Ct. Dec. 13, 1994) (translation ours).

Notwithstanding the evidence and the Puerto Rico court's declaratory judgment, Defendants denied Plaintiffs' insurance claim. By Ms. Linda Durrance's letter dated June 29, 1995, Defendants explained:

> We do acknowledge the disappearance of Mr. Canales and even the possibility he is deceased since the Court has ruled on his death. However, all the papers submitted and our in-depth investigation has been unable to locate his body or any evidence showing his death would be due to bodily injury from an accident. Even though his car was involved in the accident shortly after his disappearance and his personal items were found in the car, there is nothing to indicate he was violently removed from or injured while a passenger in his car which would cause his death. The information contained in our file does not show Mr. Canales [sic] disappearance and subsequently court-ruled death to be a result of bodily injury as defined by the policy nor does it meet the "Disappearance" provision requirements of the policy. Therefore, we are unable to provide any benefits under this policy.

On November 8, 1995, Plaintiffs then filed this action in the Superior Court for the Commonwealth of Puerto Rico, to collect their benefits under the policy. Defendants removed the action based upon the Employee Retirement Income Security Act ("ERISA"), under the provisions of which Defendants issued the policy. 29 U.S.C.A. § 1132(a)(1)(B). Pending before the court is Plaintiffs' Motion for Summary Judgment, which the court grants for the reasons stated below.

## III. SUMMARY JUDGMENT STANDARD

The function of summary judgment is "to pierce the boilerplate of the pleadings and examine the parties' proof to determine whether a trial is actually necessary." *Vega–Rodríguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997) (citing *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992)). A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trial worthy issue as to some material fact." *Cortés–Irizarry v. Corporación Insular*, 111 F.3d 184, 187 (1st Cir.1997). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case", *Vega–Rodríguez*, 110 F.3d at 178, and "genuine" "if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." *Cortés–Irizarry*, 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face

of a properly documented summary judgment motion. Moreover, even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Ayala-Gerena v. Bristol Myers-Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996) (citations omitted).

## IV. ANALYSIS

Defendants argue that Plaintiffs have not shown, by a preponderance of the evidence, that Canales died. Defendants also argue that, if Canales actually died, Plaintiffs have not shown that his death was caused by bodily injury as a result of an accident when the policy was in effect. The court disagrees. No reasonable jury could find by a preponderance of the evidence that Canales did not die from bodily injury as a result of an accident.

## A. PUERTO RICO COURT'S DECREE

■ The courts of Commonwealth of Puerto Rico have already determined that Canales died the day of his disappearance as a victim of a car-jacking. Notwithstanding the fact that this claim arises under ERISA, a state court's certification is still "due proof of death" and Defendants are bound by it.

In *Yarde v. Pan American Life Ins. Co.,* 840 F.Supp. 406 (D.S.C.1994), the beneficiaries of a life insurance policy had originally brought an action in the South Carolina Court of Common Pleas to obtain a presumptive death certificate for the insured. By the state court's order, the South Carolina Department of Health and Environmental Control issued the requested death certificate. Still, the beneficiaries had to file an action to recover the benefits under the policy and the insurer removed the action based upon ERISA.

The district court held that the state court's finding and the state agency's certification were "due proof of death" in the ERISA action because, when a person disappears and no legal proof of death is immediately available, a beneficiary is forced to obtain a certificate of presumptive death.

*Id.* at 412–13. State courts have jurisdiction over such procedures, not federal courts. The appellate court affirmed the district court's holding, as to this issue. *Yarde v. Pan American Life Ins. Co.,* 67 F.3d 298 (4th Cir.1995).

In the same manner, the court holds that the Puerto Rico declaratory judgment is "due proof" of Canales's death as a car-jacking victim.

## B. THE EVIDENCE

Even if a state court had not declared Canales's death, the court still holds that no reasonable jury could find that the evidence does not show that Canales died on the day of his disappearance.

In *Rodríguez-Díaz v. Mutual of Omaha Insurance Co.,* 803 F.Supp. 575 (D.P.R.1992), the insured under a life insurance policy disappeared after he set out on a trip at sea and the boat in which he navigated capsized. After an extensive search, the authorities never found the insured's body. The Coast Guard investigated and reported that there was only a minimal chance for survival.

Since the insurer denied payment claiming that the insured's body had not been recovered, the beneficiaries filed an action to collect and a motion for summary judgment. Pursuant to the circumstantial evidence, the court found that the insured had died as a result of a peril at sea and granted the beneficiary's motion. *Id.* at 578. The court stated that "a court can infer death if it appears that an absent person encountered some peril which could reasonably be expected to cause that person's death" and added that "other courts have agreed that circumstantial evidence of an absent person's exposure to a peril is sufficient to allow for an inference of the missing person's death." *Id.* at 578 (citations omitted).

■ As to Canales's disappearance, there is more than enough circumstantial evidence that leads to the same conclusion. Canales has been missing for more than a decade. Even after an extensive search, the authorities have not found him. His automobile had gunpowder on a door and mud on its under-

carriage, as if someone had driven it off-road in order to shoot Canales and leave his body where it could not be found. An experienced police detective concluded that he died as a car-jacking victim.

Pursuant to the circumstantial evidence, the court finds that Canales died as a victim of a crime on the day of his disappearance and, therefore, that Plaintiffs are entitled to collect under the life insurance policy.

## C. DEFINITION OF "ACCIDENT"

■ Defendants further argue that, even in the possibility of Canales's death, Plaintiffs have not presented any evidence showing that he died from bodily injury as a result of an "accident". Again, the court disagrees. It is inconceivable that anybody could argue that Canales's death—caused by a gunshot as a result of a car-jacking—was not a death caused by bodily injury as a result of an accident.

In *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077 (1st Cir.1990), the First Circuit Court of Appeals thoroughly dealt with the definition of the word "accident" in the context of ERISA actions. In general terms, insurance contracts, even those covered by ERISA, "must be liberally construed in favor of a policy holder or beneficiary ... and strictly construed against the insurer in order to afford the protection which the insured was endeavoring to secure when he applied for the insurance." *Id.* at 1084 (citations omitted).

■ Insurance benefits of an ERISA regulated policy must be interpreted under principles of federal substantive law. *Id.* In developing federal common law on this issue, being in its formative stages, it is appropriate that the courts examine the various state law approaches.

In specific terms, "accident"—"a concept which is largely intuitive"—has been consistently defined as undesigned, unintentional, and unexpected and "these terms should be judged from the viewpoint of the insured." *Id.* at 1086–87. The court should then en-

gage in an objective analysis of the insured's expectations and, in this analysis, must ask whether a reasonable person would have viewed the injury as likely to occur. *Id.* at 1088.

Pursuing the development of federal common law as to this issue in *Lincoln Nat'l Life Ins. Co. v. Evans,* 943 F.Supp. 564 (D.Md. 1996), the court stated: "While it may seem counterintuitive, in the case of an intentional homicide, the common law has 'prescrib[ed] that these terms should be judged from the viewpoint of the insured,' not that of the killer." *Id.* at 568 (citations omitted). The majority of courts do not perceive a slaying through the eyes of the murderer, but rather from the eyes of the victim, to whom the murder is unforeseen and accidental within the terms of an insurance policy. *Id.* (citation omitted).

In *Ashland Oil, Inc. v. Miller Oil Purchasing Co.,* 678 F.2d 1293 (5th Cir.1982), the appellate court stated that the word "accident" includes assaults to the insured, as it had originally been decided in *Jernigan v. Allstate Ins. Co.,* 269 F.2d 353 (5th Cir.1959). *Id.* at 1321. In *Jernigan,* a third party had intentionally run over the insured with an automobile, causing the insured's death, and the court held that, under "general law," the death was caused by an "accident." *Jernigan v. Allstate Ins. Co.,* 269 F.2d at 355. The court surveyed the common law of various states and found that the widely accepted view was that the term "accident" should be viewed from the standpoint of the victim[1] and, therefore, that such term includes deliberate assaults. *Id.* at 355–56. *See, e.g., State Farm Mutual Automobile Ins. Co. v. Blystra,* 86 F.3d 1007 (10th Cir.1996) (viewing the incident from the injured insured's perspective, the court held that an intentional shooting, in the same manner as an intentional stabbing, was an accident covered by the insurance policy).

■ Defendants, further, have not provided any evidence that Canales was himself involved in criminal activities or died in any

---

1. The court explained that the minority view dealt with cases where it was the insured who committed the assault, removing these cases from conflict with the majority view. *Id.* at 356, n. 4.

other way but as a victim of a crime. The court therefore holds that a person that dies as a consequence of being a crime victim, there being no evidence that the victim was involved in crime or in the criminal activity, complies with the definition of "accident" adopted by the First Circuit in *Wickman*—an act that is "undesigned, unintentional and unexpected" "judged from the viewpoint of the insured."

### D. "DISAPPEARANCE" PROVISION

■ Since Defendants refused to accept that Canales died as a victim of car-jacking, contrary to the Puerto Rico court's decree and the evidence, Defendants must then turn to the presumption in the policy's "Disappearance" provision. Viewing the provision liberally in Plaintiffs' favor, *Wickman,* 908 F.2d at 1084, the court further concludes that, after a year from Canales's disappearance without explanation, the clause must come into force. Thus, Defendant is contractually bound by the presumption that Canales died from bodily injury as a result of an accident. An actual finding of Canales's death or the occurrence of an accident is not even necessary.

Therefore, Plaintiffs are entitled to collect under the life insurance policy.

### V. PREJUDGMENT INTEREST AND ATTORNEYS' FEES

Both prejudgment interest and attorneys' fees are available in ERISA cases and, as wholly discretionary measures, the appellate court will only disturb such rulings if the trial court indulged in a serious lapse in judgment. *Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 100 F.3d 220, 223 (1st Cir.1996).

### A. PREJUDGMENT INTEREST

■ In *West Virginia v. United States,* 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987), an ERISA case, the Court unanimously held that prejudgment interest was an element of complete compensation left to the discretion of the district court. There is widespread support for pre-

judgment interest awards in ERISA cases. *Gallagher v. Park West Bank and Trust Co.,* 951 F.Supp. 10, 14 (D.Mass.1997). The district court's discretion in granting such awards encompasses, not only whether to grant them, but also the period and rate to be used in calculating the interest. *Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 100 F.3d 220, 223 (1st Cir.1996).

■ A cause of action under ERISA and the prejudgment interest on said claim both accrue when a beneficiary's benefits are denied. *Id.* Setting the accrual date in this manner advances the general purposes of prejudgment interest, serves ERISA's remedial objective by making a participant whole for the period during which the legally due benefits were withheld and, further, prevents unjust enrichment. *Id.* at 224.

In the case at hand, Defendants wrongfully denied Plaintiffs' benefits by Ms. Durrance's letter of June 29, 1995. On that same date, Plaintiffs' cause of action accrued and so did their right to prejudgment interest.

Still, the court must calculate the rate for said prejudgment interest. Since ERISA is silent on this issue, a district court electing to award prejudgment interest in an ERISA case has discretion in choosing a rate. *Id.* at 225. "As a general rule, federal law governs the scope of remedies available when a claim arises under federal statute, and this doctrine extends to the rate of prejudgment interest.... Of course, if the particular federal statute is silent, courts have discretion to select an appropriate rate, and they may look to outside sources, *including state law,* for guidance." *Id.* at 224–25 (emphasis added).

■ It is appropriate, then, to turn to the Puerto Rico Rules of Civil Procedure. Rule 44.3 provides for the application of the prejudgment interest rate in effect at the date of judgment, as fixed by the Finance Board of the Office of the Commissioner of Financial Institutions. The Board fixes the rate every six months. Hence, prejudgment interest is to be paid at the rate fixed since June 29, 1995 until the date of final payment.[2]

---

**2.** The fixed rates have been the following: 9.5% from January 1995 until June 1995,

10.00% from July 1995 until December 1995, 9.75% from January 1996 until June 1996,

## B. ATTORNEY'S FEES

In an ERISA action advanced by a beneficiary, it is clear that the court, in its discretion, may allow reasonable attorneys' fees to the prevailing party. 29 U.S.C.A. § 1132(g)(1). Since this discretion is not standardless, though, the Court of Appeals for the First Circuit has set a "flexible" test containing five basic factors to weigh in the balance: (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions. *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (1st Cir.1996); *Gray v. New England Tel. and Tel. Co.*, 792 F.2d 251, 257–58 (1st Cir.1986). However, the court does not have to consider all five factors and no single factor is necessarily determinative. *Id.* at 258.

Defendants are therefore ordered to show cause within twenty days why attorneys' fees should not be granted. Plaintiffs are to respond within twenty days thereafter and, further, Plaintiffs are to provide sworn evidence and a memorandum to comply with the "loadstar" method. See *Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992), *Boston and Maine Corp. v. Moore*, 776 F.2d 2, 6 (1st Cir.1985) and *Boston and Maine Corp. v. Sheehan, Phinney, Bass & Green*, 778 F.2d 890, 894 (1st Cir.1985), in which the Supreme Court and the Court of Appeals for the First Circuit adopted the "loadstar" analysis to review the reasonableness of attorney's fees.[3]

## VI. CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' Motion for Summary

9.25% from July until 1996 December 1996,
9.25% from January 1997 until June 1997,
9.50% from July 1997 until December 1997.

**3.** The court is to examine twelve factors drawn from the A.B.A. Ethical Rules. *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir.

Judgment and GRANTS Plaintiffs' request for prejudgment interest on the principal sum, as of June 29, 1995. Further, the court ORDERS Defendants to show cause why attorneys' fees should not be granted, ORDERS Plaintiffs to respond within twenty days thereafter and ORDERS Plaintiffs to provide sworn evidence and a memorandum to comply with the "loadstar" method.

IT IS SO ORDERED.

1974). *See Hensley v. Eckerhart*, 461 U.S. 424, 433–37, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983). *See also Ramos v. Davis & Geck*, 976 F.Supp. 108 (D.P.R.1997) (containing an excellent discussion of the criteria used in "loadstar methodology").