**Arthur T. COTTRILL, Plaintiff, Appellant,**

v.

**SPARROW, JOHNSON & URSILLO, INC., et al., Defendants, Appellees.**

**No. 96–1542.**

United States Court of Appeals, First Circuit.

Heard Nov. 4, 1996.

Decided Nov. 19, 1996.

Jeffrey S. Brenner, Providence, RI, with whom Corrente, Brill & Kusinitz, Ltd. was on brief, for plaintiff, appellant.

Edward C. Roy, Providence, RI, with whom Roy & Cook was on brief, for defendants, appellees.

Before SELYA, CYR and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

We are summoned again to survey the battleground on which plaintiff-appellant Arthur T. Cottrill has been struggling to recover his beneficial interest in a profit-sharing plan maintained by his former employer, Sparrow, Johnson & Ursillo, Inc. (SJU).[1] In our first visit to the war zone we determined that Cottrill was not a fiduciary within the contemplation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461 (1994), and specifically, 29 U.S.C. § 1002(21)(A). *See Cottrill v. SJU,* 74 F.3d 20, 22 (1st Cir.1996). We therefore reversed the district court's contrary ruling and remanded for the entry of judgment in Cottrill's favor. *See id.*

The entry of judgment did not end the hostilities. Cottrill appeals anew, this time contending that the district court abused its discretion by (1) miscalculating prejudgment interest, and (2) denying him attorneys' fees. We affirm.

### I.

### *Setting the Stage*

We refrain from rehearsing the facts for two reasons. First, they are adequately stated in our earlier opinion. *See id.* at 21. Second, the questions that Cottrill now raises do not pertain directly to the merits of his cause, but concern only embellishments to the judgment. Thus, after pausing to elucidate the standard of review, we proceed immediately to the appellant's asseverational array.

■ Both prejudgment interest and attorneys' fees are available, but not obligatory, in ERISA cases. *See Quesinberry v. Life Ins. Co. of North Am.,* 987 F.2d 1017, 1030 (4th Cir.1993) (en banc) (discussing prejudgment interest); 29 U.S.C. § 1132(g)(1) (discussing attorneys' fees). An appellate court reviews the grant or denial of prejudgment interest in ERISA cases solely for abuse of discretion. *See Smith v. American Int'l Life Assurance Co.,* 50 F.3d 956, 957 (11th Cir. 1995); *Anthuis v. Colt Indus. Operating*

*Corp.,* 971 F.2d 999, 1002 (3d Cir.1992). The same standard of review obtains in connection with rulings granting or denying applications for attorneys' fees under 29 U.S.C. § 1132(g)(1). *See Thorpe v. Retirement Plan of the Pillsbury Co.,* 80 F.3d 439, 445 (10th Cir.1996); *Gray v. New England Tel. & Tel. Co.,* 792 F.2d 251, 259 (1st Cir.1986). Consequently, we will disturb such rulings only if the record persuades us that the trial court "indulged a serious lapse in judgment." *Texaco P.R., Inc. v. Department of Consumer Affairs,* 60 F.3d 867, 875 (1st Cir.1995); *accord Lutheran Med. Ctr. of Omaha, Neb. v. Contractors, Laborers, Teamsters & Eng'rs Health & Welfare Plan,* 25 F.3d 616, 623–24 (8th Cir.1994).

### II.

### *Analysis*

### *A.*

### *Prejudgment Interest*

■ In ERISA cases the district court may grant prejudgment interest in its discretion to prevailing fiduciaries, beneficiaries, or plan participants. This judicial discretion encompasses not only the overarching question—whether to award prejudgment interest at all—but also subsidiary questions that arise after the court decides to make an award, including matters such as the period and rate to be used in calculating interest. *See, e.g., Smith,* 50 F.3d at 958.

In this instance, the district court awarded prejudgment interest, but, in Cottrill's estimation, the court chose an unrealistic accrual date (thereby truncating the period for which it allowed interest) and then compounded the error by selecting too miserly an interest rate. We address each of these complaints in turn.

■ 1. *The Date of Accrual.* Ordinarily, a cause of action under ERISA and prejudgment interest on a plan participant's claim both accrue when a fiduciary denies a participant benefits. *See, e.g., Larsen v.*

---

1. The defendants in this case are SJU, its profit-sharing plan (the Plan), and Steven J. Ursillo (SJU's chief executive officer and the Plan's trustee). For simplicity's sake, we refer to them collectively as "the trustee" or "the defendants."

*NMU Pension Trust,* 902 F.2d 1069, 1073 (2d Cir.1990); *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357, 361 (5th Cir.), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981); *Algie v. RCA Global Communications, Inc.,* 891 F.Supp. 875, 899 (S.D.N.Y.1994), *aff'd,* 60 F.3d 956 (2d Cir.1995). Setting the accrual date in this manner not only advances the general purposes of prejudgment interest, *see West Virginia v. United States,* 479 U.S. 305, 310, 107 S.Ct. 702, 706, 93 L.Ed.2d 639 (1987), but also serves ERISA's remedial objectives by making a participant whole for the period during which the fiduciary withholds money legally due. *See Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 286 (2d Cir.1992). Figuring the accrual date in this way also prevents unjust enrichment. *See Sweet v. Consolidated Aluminum Corp.,* 913 F.2d 268, 270 (6th Cir.1990); *Short v. Central States, Southeast & Southwest Areas Pension Fund,* 729 F.2d 567, 576 (8th Cir.1984).

■ Cottrill asserts that his cause of action accrued on December 12, 1990, when the lawyer who was handling his divorce sent a letter to the Plan inquiring into the availability and value of Cottrill's beneficial interest. The district court saw matters differently; it found that the cause of action accrued on December 31, 1991, when the trustee erroneously declared Cottrill's funds forfeit.

The district court's reasoning is persuasive. The attorney's letter cannot reasonably be construed as a demand for funds. It was an inquiry for the purpose of providing information necessary to the divorce pavane—no more, no less. The defendants' response to this letter confirms our assessment. Neither in language nor in tone does it presume to deny any application for benefits, but, rather, merely indicates the amounts involved and when particular assets would be available for distribution.

Once past the lawyer's letter, the district court's determination that the defendants did not deprive Cottrill of his benefits until they offset his account on December 31, 1991 (ostensibly to recoup losses that he occasioned, *see Cottrill,* 74 F.3d at 21) is virtually inevitable.[2] Hence, the court acted well within its discretion in finding that prejudgment interest began to accrue on that date.

■ **2. *The Rate of Interest.*** ERISA provides for postjudgment interest to be calculated at the federal rate, 28 U.S.C. § 1961(a) (1994), but it contains no explicit provision for prejudgment interest. Here, the district court employed the federal statutory rate for that purpose. The appellant argues that the court should have used the (somewhat more munificent) rate available under Rhode Island law. *See* R.I. Gen. Laws § 9–21–10 (1985) (stipulating a flat rate of 12% per annum). We do not think that the district court exceeded its discretion in choosing the federal rate.

■ As a general rule, federal law governs the scope of remedies available when a claim arises under a federal statute, and this doctrine extends to the rate of prejudgment interest. *See Colon Velez v. Puerto Rico Marine Mgmt., Inc.,* 957 F.2d 933, 941 (1st Cir.1992). Of course, if the particular federal statute is silent, courts have discretion to select an appropriate rate, and they may look to outside sources, including state

---

**2.** The appellant disputes the district court's finding that, prior to year's end, the appellant's money continued to earn interest. We have two reactions. First, the finding is unnecessary to the result, for it is the fact that the account remained untouched, coupled with the absence of a meaningful turnover demand at an earlier time, that renders the December 31, 1991 date defensible. Second, the court relied upon the representations of SJU's counsel (uncontradicted by Cottrill's lawyer) in making this *ore tenus* finding and invited Cottrill to seek to modify the order if these representations were erroneous. Cottrill never accepted the invitation. Therefore, he cannot complain of the finding here. *See* *Dow v. United Bhd. of Carpenters & Joiners,* 1 F.3d 56, 61–62 (1st Cir.1993) (holding that a party who eschewed the court's invitation to seek discovery if needed waived any subsequent objection to lack of discovery); *Reilly v. United States,* 863 F.2d 149, 168 (1st Cir.1988) (upholding denial of discovery request where supposedly aggrieved party did not accept the magistrate's invitation to renew it at a later date); *cf. United States v. Schaefer,* 87 F.3d 562, 570 n. 9 (1st Cir.1996) (explaining that defendant's failure to file a motion for reconsideration undercut his later objection to district court's suppression order).

law, for guidance. *See id.* Because ERISA is inscrutable on the subject, a court that elects to award prejudgment interest in an ERISA case has broad discretion in choosing a rate. *See Hansen v. Continental Ins. Co.,* 940 F.2d 971, 983–85 (5th Cir.1991). In such a situation, equitable considerations should guide the exercise of judicial discretion. *See, e.g., Kinek v. Paramount Communications, Inc.,* 22 F.3d 503, 514 (2d Cir.1994); *Anthuis,* 971 F.2d at 1009.

The appellant insists that the lower court departed from "clear federal appellate court precedent" favoring the use of state prejudgment interest rates in ERISA cases. He is wrong. Although federal courts sometimes have looked to state rates for guidance, *see, e.g., Hansen,* 940 F.2d at 983–84, they have done so as a matter not of compulsion, but of discretion. Indeed, the appellant's argument conveniently overlooks numerous ERISA cases in which federal appellate and district courts have approved use of the federal statutory rate for prejudgment interest. *See, e.g., Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1331 (8th Cir.1995); *Sweet,* 913 F.2d at 270; *Blanton v. Anzalone,* 760 F.2d 989, 992–93 (9th Cir.1985); *United States v. Mason Tenders Dist. Council,* 909 F.Supp. 891, 895 (S.D.N.Y.1995).

We need not tarry. The law confers discretion on the trial judge, not on the court of appeals. In this instance the judge chose to use the federal statutory rate in computing prejudgment interest. Utilizing this rate promotes uniformity in ERISA cases. Furthermore, the federal rate is an objective measure of the value of money over time, and the record makes manifest that, in selecting it, the district judge considered both the rationale of full compensation and ERISA's underlying goals. We note, too, that the federal rate is especially appropriate in this case because the Plan's funds were initially invested in Treasury bills. *See, e.g., Algie,* 891 F.Supp. at 899 (finding the federal rate appropriate when it more closely approximated the likely return on the funds withheld). Mindful of these realities, we do not think that equity demands the use of a higher rate.

## B.

### Counsel Fees

The appellant also challenges the denial of counsel fees. Congress declared that, in any ERISA claim advanced by a "participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee" to the prevailing party. 29 U.S.C. § 1132(g)(1). Unlike other fee-shifting statutes, however, ERISA does not provide for a virtually automatic award of attorneys' fees to prevailing plaintiffs. Instead, fee awards under ERISA are wholly discretionary. *See Gray,* 792 F.2d at 259.

This discretion is not standardless. To channel its exercise, this court has cited five basic factors that customarily should be weighed in the balance: (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions. *See id.* at 257–58. Other courts of appeals have compiled strikingly similar lists. *See Eddy v. Colonial Life Ins. Co.,* 59 F.3d 201, 206 n. 10 (D.C.Cir.1995) (collecting cases). The circuits agree that such compendia are exemplary rather than exclusive. *See id.* at 206; *Quesinberry,* 987 F.2d at 1029. An inquiring court may—indeed, should—consider additional criteria that seem apropos in a given case. *See Anthuis,* 971 F.2d at 1012. In a word, the test for granting or denying counsel fees in an ERISA case is "flexible." *Gray,* 792 F.2d at 258.

1. *Eschewing Presumptions.* Several courts of appeals have declined to adopt a mandatory presumption that attorneys' fees will be awarded to prevailing plaintiffs in ERISA cases absent special circumstances. *See Eddy,* 59 F.3d at 206–07; *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield,* 41 F.3d 1476, 1485–86 (11th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2002, 131 L.Ed.2d 1003 (1995); *McPherson v.*

*Employees' Pension Plan of Am. Re–Ins. Co.*, 33 F.3d 253, 254 (3d Cir.1994); *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 422 (4th Cir.1993); *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1302 (6th Cir.1991); *Iron Workers Local # 272 v. Bowen,* 624 F.2d 1255, 1265–66 (5th Cir.1980); *see also* Note, *Attorney's Fees Under ERISA: When Is an Award Appropriate?,* 71 Cornell L.Rev. 1037, 1049–55 (1986) (arguing against a mandatory presumption). There is, however, some conflicting authority. *See Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344, 1356 (8th Cir.1980) (applying mandatory presumption used under civil rights statutes in favor of prevailing plaintiffs in ERISA cases); *see also Bittner v. Sadoff & Rudoy Indus.,* 728 F.2d 820, 830 (7th Cir.1984) (adapting presumption used in Equal Access to Justice Act cases to ERISA milieu).[3]

■ We share the majority view. We hold that, in an ERISA case, a prevailing plaintiff does not, merely by prevailing, create a presumption that he or she is entitled to a fee-shifting award. Our holding flows naturally from the importance of preserving flexibility in this area of the law. Our holding is, moreover, adumbrated by our earlier decision in *Gray.* There, we explicitly rejected the creation of a presumption in favor of prevailing defendants. 792 F.2d at 258. We pointed out that 29 U.S.C. § 1132(g)(1) speaks in discretionary terms, and that its legislative history, unlike that of certain civil rights statutes, does not support a presumption via-à-vis counsel fees. *See Gray,* 792 F.2d at 258–59. This rationale suggests to us that a presumption in favor of prevailing plaintiffs also would be overkill; because the five basic factors have a built-in bias in favor of prevailing plaintiffs, *see id.* (recognizing that the second, third, and fourth factors may favor prevailing plaintiffs more so than prevailing defendants), the superimposition of a presumption seems unnecessary as a means

of protecting the legitimate interests of plan beneficiaries and participants.

■ **2.** *Validity of the Order.* Having declined to employ a mandatory presumption, we turn now to the district court's order. The appellant contends that the court mishandled the five basic factors. This contention lacks force.

In terms of the first factor—culpability—the record contains no indication that the defendants exhibited bad faith; they consulted with counsel and conducted a year-long investigation before offsetting Cottrill's account. Thus, even though the Plan was ultimately found liable under the statute, the worst that can be said is that the defendants, confronted with a sizeable loss attributable to the appellant's imprudence, misjudged the Plan's legal rights.

The district judge made an additional point, referring to his original finding that Cottrill was the person primarily responsible for the Plan's substantial losses and deeming this fact relevant to the issue of attorneys' fees.[4] This is out of the ordinary, for the traditional formulation of the first factor suggests an inquiry into the bad faith or culpability only of the losing party. Still, on the odd facts of this case, we cannot say that the district court's emphasis on the prevailing party's culpability constitutes an abuse of discretion. *Cf. Armistead,* 944 F.2d at 1304 (finding no abuse of discretion in the absence of a showing that consideration of other factors would have led to a different result). At the very least, Cottrill's conduct is germane as an additional—and significant—circumstance to be considered under the flexible standard that governs ERISA fee applications. *See, e.g., Anthuis,* 971 F.2d at 1012.

■ The second factor is a non-starter. While evidence existed that the defendants had funds available and could have afforded to pay the appellant's fees, this datum has

---

**3.** We do not place *Smith v. CMTA–IAM Pension Trust,* 746 F.2d 587 (9th Cir.1984) in this category. Although *Smith* quotes liberally from a civil rights case, *see id.* at 589, the opinion does not suggest the use of a mandatory presumption, but merely applies the five basic factors in light of ERISA's remedial purposes. *See Eddy,* 59 F.3d at 207 (reaching the same conclusion).

**4.** This finding had been made at trial and, although we reversed the judgment, our decision in no way questioned the finding of culpability. *See Cottrill,* 74 F.3d at 21 (chronicling the conduct which informed the lower court's assessment of culpability).

little relevance here. An inability to afford attorneys' fees may counsel against an award, *see Armistead,* 944 F.2d at 1305, but the capacity to pay, by itself, does not justify an award, *see Thorpe,* 80 F.3d at 445; *Tiemeyer v. Community Mut. Ins. Co.,* 8 F.3d 1094, 1102 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1371, 128 L.Ed.2d 48 (1994); *Quesinberry,* 987 F.2d at 1030. Consequently, the district court did not blunder in finding that the second factor lacked appreciable significance.

Citing the uniqueness of the situation, the district court found the third factor—generalized deterrence—to be a mixed bag. The court reasoned that an award of fees might deter the wrongful withholding of accounts by fiduciaries, but that a denial of fees might deter participants and beneficiaries from acting recklessly in respect to the assets of employee benefit plans. The appellant does not make any convincing counter-argument. While we recognize the deterrent value of fee awards against errant fiduciaries and attach considerable weight to such deterrence, we discern no reason on these peculiar facts for rejecting the district court's analysis of deterrence as an element here. Given the trial court's superior vantage point, its evaluative judgments about such case-specific matters are entitled to substantial respect.

The fourth factor—common benefit—cuts against the appellant. His situation is both exotic and fact-dependent; thus, other participants do not stand to profit from the appellant's success. This lack of other similarly situated participants militates against a fee award. *See Custer,* 12 F.3d at 423.

Last but not least, we address the merits of the underlying suit. We agree with the court below that the case presented a close question.[5] The very fact that an experienced trial judge originally found in the defendants' favor argues for a finding that the defendants had a reasonable basis for contesting Cottrill's entitlement to the funds, even though this court ultimately ruled against them. *Cf. Sierra Club v. Secretary of the Army,* 820 F.2d 513, 519 (1st Cir.1987) (acknowledging in an EAJA case that a party's success in the district court is some evidence that its position was justified); *Porter v. Heckler,* 780 F.2d 920, 922 (11th Cir.1986) (similar). The fifth factor, then, is something of a wash.

The bottom line is that the district court applied the conventional five-factor test in an acceptable manner and added idiosyncratic features to it in a reasonable way. The court recognized that a successful plaintiff in an ERISA case more often than not should recover attorneys' fees, but concluded for reasons fully articulated in the record that this claim fell on the other side of the border. If writing on a pristine page, we might have weighed the mix of factors differently—but that is beside the point. Absent a mistake of law or a clear error in judgment—neither of which is evident here—we must defer to the trial court's first-hand knowledge and to its battlefield determination that the specific facts of this case do not warrant a fee award. *See Florence Nightingale,* 41 F.3d at 1485; *Gray,* 792 F.2d at 260.

### III.

### *Conclusion*

We need go no further. The rulings of which the appellant complains were well within the realm of the trial court's discretion. The appellant, once victorious, is now vanquished. He perhaps should have quit while he was ahead.

***Affirmed.***

---

5. In our prior opinion we wrote that "there was no possible basis for the [district] court's conclusion that Cottrill was a fiduciary." *Cottrill,* 74 F.3d at 22. The appellant seizes upon this remark as proof that the merits were open and shut. But the appellant wrests this statement from its contextual moorings. Fairly read, the comment capped the preceding analysis which, examined in context, illustrated the uncertainty of who is a fiduciary under ERISA. This was a reasonably close case and, just as we have warned that a judicial decision cannot be transmogrified by placing overly great reliance on an awkward locution contained in a trial court's opinion, *see Dopp v. Pritzker,* 38 F.3d 1239, 1244 n. 5 (1st Cir.1994); *Lenn v. Portland Sch. Comm.,* 998 F.2d 1083, 1088 n. 4 (1st Cir.1993), so, too, we are wary of a party's attempts to attach portentous significance to an appellate court's use of isolated phraseology.