Joan SNOW, Plaintiff,

v.

AETNA INSURANCE COMPANY, Constar International, Shelby County Government, Blue Cross and Blue Shield of Memphis, Saint Francis Hospital, Inc., and the Department of Health and Human Services, Defendants.

No. 93–2330 ML/BRE.

United States District Court,
W.D. Tennessee,
Western Division.

March 31, 1998.

Robert L. Green, Neely Green Fargarson Brooke & Summers, Memphis, TN, for Joan Snow.

Philip E. Mischke, L. Ross Higman, Wyatt, Tarrant & Combs, Memphis, TN, for Aetna Ins. Co.

Charles M. Weirich, Jr., Wyatt, Tarrant & Combs, Memphis, TN, Henry L. Klein, Jane Pickelmann Long, Apperson, Crump, Duzane & Maxwell, Memphis, TN, for Constar Intern.

William L. Bomar, John I. Houseal, Jr., Glankler Brown Gilliland Chase Robinson & Raines, Memphis, TN, for Shelby County Government.

Joe A. Dycus, U.S. Attorney's Office, Memphis, TN, Carolyn L. Mackie, Dept. of Health and Human Services, Atlanta, GA, for Dept. of Health and Human Services.

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

McCALLA, District Judge.

This matter was referred to Magistrate Judge Breen for report and recommendation as to whether defendants Constar International ("Constar") and Shelby County Government ("Shelby County") must pay interest on monies owed by them pursuant to the Court's August 7, 1997 memorandum opinion. On January 30, 1998, Magistrate Breen submitted his recommendation as to the disposition of this matter. On February 11, 1998 and February 13, 1998 respectively, defendants Constar and Primacy Corporation [1] each filed objections to Magistrate Breen's report and recommendation. For the reasons set forth below, defendants' objections are OVERRULED and Magistrate Breen's report and recommendations are ADOPTED by this Court.

## INTRODUCTION

On December 26, 1990, plaintiff's husband, Homan Snow, was admitted to St. Francis Hospital for open heart surgery. On the date of his admission, Mr. Snow was covered by three insurance policies. Mr. Snow was insured as a retiree under the Shelby County Government Group Benefit Plan administered by Blue Cross and Blue Shield of Memphis. He was also covered as a dependant under the Constar Employee Health Benefit Plan administered by defendant Aetna Insurance Company through his wife's employment with Constar. Finally, Mr. Snow was covered by Medicare. At the time of his admission, neither Mr. Snow nor his wife disclosed the existence of the Constar coverage. On August 22, 1991, Mr. Snow died, having incurred approximately $458,000.00 in medical expenses.

In October of 1991, St. Francis submitted a claim to Medicare for primary reimbursement. Medicare paid $113,855.59 as reimbursement to St. Francis. St. Francis also billed Blue Cross in the amount of $112,738.00, of which Blue Cross made some payments but refused to pay the remainder. Sometime before March 23, 1992, St. Francis was made aware of the Constar policy by an employee of Blue Cross. On March 25, 1992, St. Francis filed a claim with Constar's insurance carrier, Aetna. On July 2, 1992, Constar instructed Aetna not to pay the bill because of a dispute over whether it or Blue Cross was the primary payer. On July 31, 1992, Constar's attorneys notified St. Francis via letter of Constar's concerns about the status of its responsibility for the bill. Constar did not advise plaintiff of its decision to deny benefits until three months after she filed suit.

---

1. Defendant Primacy Corporation was formerly known as St. Francis Hospital, Inc., and will be referred to in this order as "St. Francis".

854

A bench trial was held in this matter on February 28 and 29, 1996. On August 7, 1997, this Court issued a memorandum opinion and concluded that Constar was the primary payor. The Court found that Constar's decision not to pay benefits was arbitrary and capricious, as it was erroneous as a matter of law, and ordered Constar to accept plaintiff's claim. Specifically, the Court ordered Constar to reimburse Medicare in the amount of $113,855.59, and to pay St. Francis the amount of $268,889.04. The Court held that the liability of Shelby County was limited to $2000.00, the stop-loss limit under the Constar plan, to be paid to St. Francis. On November 26, 1997, the Court referred the issue of whether Constar and Shelby County should have to pay interest on these amounts to Magistrate Breen for report and recommendation.

On January 30, 1998, Magistrate Breen issued recommendations as to the disposition of the following three issues: 1) the amount of prejudgment interest (if any) due to St. Francis from Constar; 2) the amount of prejudgment interest (if any) due to St. Francis from Shelby County; and 3) the amount of prejudgment interest (if any) due to Medicare from Constar. Each of these issues will be addressed below in light of the parties' objections.[2]

## ANALYSIS

### I. *Prejudgment Interest Due to St. Francis from Constar*

Magistrate Breen recommended that prejudgment interest be awarded to St. Francis on the monies owed to it by Constar, and recommended that July 2, 1992, the date on which Constar decided to deny benefits, should be the date upon which such interest should begin to accrue. Constar objects to the Magistrate's recommendation to award prejudgment interest to St. Francis. St. Francis does not object to the award of interest, and does not object to the Magistrate's recommendation that such interest be compounded annually, but objects to the date selected by the Magistrate as the date upon

which interest should begin to accrue and the rate at which such interest should be paid. Each of these objections will be addressed below.

### A. *Constar's objections to the award of interest*

As a threshold matter, the Court must determine whether Constar should be required to pay prejudgment interest to St. Francis on the amounts it must pay pursuant to the Court's August 7, 1997 order. Magistrate Breen recommended that, because Constar benefitted from its failure to pay the amounts owed, prejudgment should be awarded. Constar objects, arguing that St. Francis is not entitled to prejudgment interest because the Constar plan does not provide for interest payments, and to allow them would be extracontractual.

As Magistrate Breen noted in his report, although the Employee Retirement Insurance Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, ("ERISA") does not address the propriety of awards of prejudgment interest, the Sixth Circuit has held that such awards are within the sound discretion of the trial court. *Tiemeyer v. Community Mut. Ins. Co.*, 8 F.3d 1094, 1102 (6th Cir.1993). Constar contends that it should not have to pay prejudgment interest because the confusion over the coverage was caused by plaintiff's initial failure to notify St. Francis of the Constar coverage. Constar argues that the withholding of payment, therefore, cannot be deemed wrongful. However, awards of prejudgment interest are compensatory in nature, rather than punitive, and a finding of wrongdoing by the defendant is not a prerequisite to an award. *Drennan v. General Motors Corp.*, 977 F.2d 246, 253 (6th Cir. 1992).

Constar further contends that it took a good faith position as to whether it was the first party payor and should, therefore, not be required to pay interest. As the Sixth Circuit has noted, however,:

Even assuming arguendo that the [t]rustee was acting prudently in withholding the

**2.** Pursuant to 28 U.S.C. § 636, the Court conducts a de novo review of the record in evaluating defendants' objections to the Magistrate's recommendations.

pension funds...it cannot be said that this did not confer a benefit on the trustee. Any additional time one gains, *rightfully or wrongfully,* in not having to submit payment for a sum of money owed another is without a doubt a benefit. Moreover, the payee,...has been deprived of the benefit of those payments.

*Sweet v. Consolidated Aluminum Corp.,* 913 F.2d 268, 270 (6th Cir.1990) (emphasis added).

■ While Constar concedes that "there are authorities on both sides of the issue as to whether prejudgment interest is available under ERISA",[3] it argues that the Court should ignore the line of cases relied upon by Magistrate Breen in finding that an award of prejudgment interest was properly within the Court's discretion, and follow instead cases cited by Constar in support of the premise that when interest is not provided for in a pension plan, it is extracontractual and should not be awarded.[4] After a de novo review of the record and case law, the Court is persuaded by the reasoning adopted by the Magistrate, that prejudgment interest is proper because Constar was unjustly enriched by withholding of the payments to St. Francis. Accordingly, Constar's objections as to whether prejudgment interest should be awarded are OVERRULED.

B. *St. Francis' objections as to the appropriate date upon which interest should begin to accrue and the rate of interest that should be paid*

■ As stated above, Magistrate Breen recommended that interest should begin to accrue on July 2, 1992, the date upon which Constar decided to deny benefits. St. Francis submits that interest should begin to accrue on August 21, 1991, the date of Mr. Snow's death and the last date of his hospitalization. Generally, prejudgment interest on an ERISA claim accrues when a fiduciary

denies benefits. *Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 100 F.3d 220, 223–24 (1st Cir.1996). Setting the accrual date in this way makes the recipient whole for the period during which the benefits were withheld and prevents unjust enrichment. *Id.* at 224. This case presents an unusual set of facts, however, because Constar did not actually notify plaintiff of its denial of her claim until June of 1993, three months after this case was filed.

Because St. Francis did not initially know about the Constar coverage, and Constar did not know about the claim until it was first contacted by St. Francis, the Court finds that awarding prejudgment interest back to the date of Mr. Snow's death would be inappropriate. In this case, St. Francis notified Constar of the claim and submitted its request for payment on March 25, 1992, shortly after it learned that Mr. Snow was covered by Constar's plan. In a letter dated July 2, 1992, Constar instructed the administrator not to make payment due to a dispute over the claim. St. Francis was notified of Constar's decision to deny the claim by letter of July 31, 1992. Based on this unique factual situation, the Court agrees with the Magistrate that the date upon which Constar decided to deny benefits is the most realistic date for interest to begin to accrue. Accordingly, St. Francis' objections as to the date upon which prejudgment interest owed by Constar will begin to accrue are OVERRULED, and Magistrate Breen's recommendation that such interest accrue from July 2, 1992 is ADOPTED.

St. Francis also objects as to the rate of interest recommended by Magistrate Breen. Magistrate Breen recommended that the rate of interest should be based upon United States Treasury Bills, as set forth in 28 U.S.C. § 1961, which provides a uniform calculation for post-judgment interest.[5] St.

---

3. Constar's Objections at 2.

4. *See, e.g., Scott v. Central States, Southeast & Southwest Areas Pension Plan,* 727 F.Supp. 1095, 1097 (E.D.Mich.1989).

5. 28 U.S.C. § 1961 provides that:
   Interest shall be allowed on any money judgment in a civil case recovered in a district

court....Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment.

Francis objects to the use of the § 1961 rate, and argues instead that the Court should award prejudgment interest based on "two interest rates...applied to two distinct time periods." St. Francis' Objections at 2. For the period preceding September 1, 1994, St. Francis contends that the Court should award interest at the rate of 12% based upon Tenn.Code Ann. § 68–11–219(e).[6] On May 1, 1994, St. Francis Hospital changed its name to The Primacy Corporation. According to the affidavits of Barry J. Flynn, Chief Financial Officer of Primacy Corporation, Primacy Corporation's investment portfolio was established on September 1, 1994, and it has earned an average annualized rate of return on its investments of 15.9%. See August 22, 1997 and February 13, 1998 Affidavits of Barry J. Flynn. Based on this information, St. Francis argues that the Court should award interest at the rate of 15.9% for the period subsequent to September 1, 1994.

■ Neither ERISA nor any other federal statute provides an interest rate for computing prejudgment interest. Rather, an award of prejudgment interest for violation of federal law is governed by federal common law. *Rivera v. Benefit Trust Life Ins. Co.*, 921 F.2d 692, 696 (7th Cir.1991). Courts retain broad discretion to choose the rate by which to calculate prejudgment interest under ERISA. *See Wells v. U.S. Steel*, 76 F.3d 731, 737 (6th Cir.1996); *Tiemeyer*, 8 F.3d at 1102.

As to plaintiff's argument that the Court should apply Tenn.Code Ann. § 68–11–219(e) to determine the rate of interest, many courts have held that a federal court may look to state law for guidance in determining the rate of prejudgment interest. *See, e.g., Smith v. American Int'l Life Assurance Co. of N.Y.*, 50 F.3d 956, 958 (11th Cir.1995); *Colon Velez v. Puerto Rico Marine Management, Inc.*, 957 F.2d 933, 941 (1st Cir.1992).

However, although § 1961 by its terms applies only to post-judgment interest, there is considerable support for using the § 1961

rate to calculate the rate of prejudgment interest. The Eighth Circuit has held that this is the proper method for determining the rate of prejudgment interest. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1331 (8th Cir.1995). The Ninth Circuit has held that the § 1961 rate should be applied unless the trial court finds that the equities of a particular case justify use of a different rate. *Blanton v. Anzalone*, 760 F.2d 989, 993 (9th Cir. 1985). Numerous other courts, including the Sixth Circuit, have used, or permitted use of, the § 1961 rate. *See, e.g., Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (1st Cir.1996); *Sweet v. Consolidated Aluminum Corp.*, 913 F.2d 268, 270 (6th Cir.1990).

■ This Court finds that a review of the case law as a whole favors use of the federal rate. The Eighth and Ninth circuits strongly favor use of the § 1961 rate, *Mansker*, 54 F.3d at 1331; *Blanton*, 760 F.2d at 993. The Sixth Circuit, while noting that district courts are not compelled to use it, has remarked on the wisdom of using the federal rate. *EEOC v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 579 (6th Cir.1984) ("Undoubtedly in the future, district courts may be influenced by the congressional wisdom expressed in the amendment of 28 U.S.C. § 1961 [linking interest to Treasury bill rates], but we do not think they are invariably compelled to adopt the statutory post-judgment rate in determining prejudgment interest."). Moreover, utilization of the federal rate promotes uniformity in cases brought under ERISA and discourages forum shopping. *Cottrill*, 100 F.3d at 225 ("Utilizing [the federal] rate promotes uniformity in ERISA cases."). Accordingly, the Court finds that use of the federal rate is more appropriate than the Tennessee statutory rate.

The above discussion in support of use of the federal rate also supports the Magistrate's recommendation to use the § 1961

---

6. Tenn.Code Ann. § 68–11–219(c) provides that: If any portion of an assigned claim remains unpaid sixty (60) days after a billing statement from the assignee is received by the insurance company, the assignee of the claim may add an interest charge to the unpaid portion of the claim, with the actual accrual of such interest charge commencing on the thirty-first day, at an interest rate not to exceed one percent (1%) per month for an effective rate of interest of twelve percent (12%) per year....

rate instead of St. Francis' 15.9% rate of return. Moreover, St. Francis has not introduced any evidence into the record that would demonstrate that Constar earned a 15.9% rate of return by withholding the funds. To require Constar to pay interest on the funds at a rate higher than the rate of return it earned on the money would render such interest punitive. As set forth above, awards of prejudgment interest are intended to be compensatory in nature, rather than punitive. *Drennan*, 977 F.2d at 253. Accordingly, St. Francis' objections as to the rate of interest are OVERRULED and Magistrate Breen's recommendation to assess prejudgment interest at the § 1961 rate is ADOPTED. Constar is, therefore, ORDERED to pay St. Francis interest, pursuant to 28 U.S.C. § 1961, at a 4.11% rate, equal to the coupon issue yield equivalent, as determined by the Secretary of the Treasury, of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the July 2, 1992 date of accrual, compounded annually, for a total amount of $338,987.53, for the period beginning July 2, 1992 and ending March 31, 1998.[7]

## II. Prejudgment Interest Due to St. Francis from Shelby County

It appearing that there is no objection to the Magistrate's recommendation as to this issue[8], Magistrate Breen's recommendation is ADOPTED, and Shelby County is ORDERED to pay St. Francis interest, pursuant to 28 U.S.C. § 1961, at a 5.56% rate, equal to the coupon issue yield equivalent, as determined by the Secretary of the Treasury, of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the August 7, 1997 date of accrual, compounded annually, for a total amount of

$2071.89, for the period beginning August 7, 1997 and ending March 31, 1998.[9]

## III. Prejudgment Interest Due to Medicare from Constar

Constar objects to the Magistrate's recommendation that pre-judgment interest be awarded to Medicare, as there is no provision in the pension plan for the award of interest. For the reasons set forth above,[10] the Court is not persuaded by this argument, and relies, instead, on cases holding that the decision to award prejudgment interest is within the discretion of the district court. *See Cox v. Shalala*, 112 F.3d 151, 155 (4th Cir.1997). As with the funds withheld from St. Francis, the Court finds that Constar was unjustly enriched as a result of its failure to reimburse the Medicare program. Accordingly, an award of prejudgment interest is appropriate.

Constar further objects to the Magistrate's recommendation as to the rate of interest to be assessed, arguing that if interest must be paid to Medicare at all, it should be paid pursuant to the rate set forth in 28 U.S.C. § 1961. Magistrate Breen recommended, instead, that interest be paid according to the rates set forth in the letters sent from the Secretary of the Department of Health and Human Services ("Secretary") to Constar demanding payment.

On December 30, 1993, Connecticut General Life Insurance Company, the carrier under contract with the Secretary to make payments under Part B of the Medicare program, notified Constar's predecessor, Aetna, that Medicare was to be reimbursed for payments in the amount of $26,388.00 made on behalf of Mr. Snow under Part B. The notice stated that failure to repay the amount requested within sixty (60) days would result in an 13.5% interest assessment. On January 20, 1994, Blue Cross and Blue Shield of

---

7. Because the Magistrate's Report and Recommendation was entered on January 30, 1998, the amount of prejudgment interest recommended in the report is determined through February 1, 1998. As this order was entered on March 31, 1998, interest is calculated through that date.

8. In its brief, St. Francis discussed objections to the rate of interest only as to Constar. In the event that St. Francis intended these arguments

to apply to Shelby County as well, the Court determines that the federal rate as set forth in § 1961 is the proper rate for the reasons set forth in section I(B) of this order.

9. See footnote 7, *supra*.

10. See section I(A), *supra*.

Tennessee, Medicare's Part A fiscal intermediary, sent a letter to Aetna requesting reimbursement in the amount of $87,467.59. This notice stated that interest would be assessed at the rate of 13.625%, if the amount requested was not paid within sixty (60) days.

■ The Code of Federal Regulations sets forth a procedure governing the assessment of interest against a debt owed to the government. 45 C.F.R. § 30.12(a). The "notice to debtor" must inform the debtor of the amount and nature of the debt, the date payment is due, and the assessment of interest from the date the notice was mailed. *Id.* The notices sent by the Secretary to Constar contained all of the information required by the regulation. Accordingly, the Court finds that prejudgment interest began to accrue on the amount of $26,388.00 on December 30, 1993 and on the amount of $87,467.59 on January 20, 1994, the dates of the reimbursement notices forwarded to Constar. *See Cox,* 112 F.3d at 156.

As set forth above, the rate at which prejudgment interest may be assessed is within the discretion of the district court. *Tiemeyer,* 8 F.3d at 1102. After a de novo review of the case law and the record in this matter, the Court agrees with the Magistrate that the rate of interest to be assessed against Constar on the funds owed to Medicare should be as stated in the notices dated December 30, 1993 and January 20, 1994, and should not be compounded. Accordingly, the Court OVERRULES Constar's objections as to the award of prejudgment interest to Medicare and ADOPTS Magistrate Breen's recommendation. Constar is ORDERED to pay interest to Medicare at 13.5%, pursuant to the notice of the Secretary, on the amount of $26,388.00 for the period beginning December 30, 1993 and ending March 31, 1998, for a total of $41,524.77.[11] For the period beginning January 20, 1994 and ending March 31, 1998, Constar is ORDERED to pay interest on the amount of $87,467.59 at the rate of 13.625%, pursuant to the notice of the Secretary, for a total amount of $137,422.89.[12] Therefore, the total sum to be paid by Constar to the Secretary in reimbursement of payments made by Medicare under Parts A and B is $178,947.66.

## CONCLUSION

For the reasons set forth above, the Court hereby ADOPTS Magistrate Breen's January 30, 1998 Report and Recommendation. Accordingly, defendants Constar and Shelby County are ORDERED to pay prejudgment interest to St. Francis and the Secretary in the following manner:

1. *Constar to St. Francis.* Constar is ORDERED to pay St. Francis interest, pursuant to 28 U.S.C. § 1961, at a 4.11% rate, equal to the coupon issue yield equivalent, as determined by the Secretary of the Treasury, of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the July 2, 1992 date of accrual, compounded annually, for a total amount of $338,987.53, for the period beginning July 2, 1992 and ending March 31, 1998.

2. *Shelby County to St. Francis.* Shelby County is ORDERED to pay St. Francis interest, pursuant to 28 U.S.C. § 1961, at a 5.56% rate, equal to the coupon issue yield equivalent, as determined by the Secretary of the Treasury, of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the August 7, 1997 date of accrual, compounded annually, for a total amount of $2071.89, for the period beginning August 7, 1997 and ending March 31, 1998.

3. *Constar to Medicare.* Constar is ORDERED to pay interest to Medicare at 13.5%, pursuant to the notice of the Secretary, on the amount of $26,388.00 for the period beginning December 30, 1993 and ending March 31, 1998, for a total of $41,524.77. For the period beginning January 20, 1994 and ending March 31, 1998, Constar is ORDERED to pay interest on the amount of $87,467.59 at the rate of 13.625%, pursuant to the notice of the Secretary, for a total amount of $137,422.89.

---

**11.** See footnote 7, *supra.*

**12.** See footnote 7, *supra.*

Therefore, the total sum to be paid to the Secretary in reimbursement of payments made by Medicare under Parts A and B is $178,947.66.