Cook v. Liberty Life                    CV-00-408-B    03/29/02
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


**Kathleen Cook**

        v.                              Civil No. 00-408-B
                                        Opinion No. 2002 DNH 075
**Liberty Life Assurance**
 **Company of Boston**


                    <u>MEMORANDUM AND ORDER</u>

        I have before me the parties' memoranda filed in response to

my February 11, 2002 order.  This memorandum and order discusses

procedural issues raised by Liberty's submission and then

responds sequentially to the parties' points of disagreement.

1.    **Procedural Issues**

        In its memorandum, Liberty implies that I acted improperly

in treating the state-law claims it removed to this court on

grounds of ERISA preemption, <u>see</u> <u>Metropolitan Life Ins. Co. v.</u>

<u>Taylor</u>, 481 U.S. 58, 67 (1987), as a <u>de</u> <u>facto</u> claim for benefits

pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

Liberty suggests that, instead, "Cook's action should have been

dismissed."  Defendant's Memorandum Regarding Plaintiff's Request

for Damages at 7; see also id. at 2 (stating that Liberty argued that "Cook's action should be dismissed" in its motion for summary judgment).  I find this line of argument both surprising and unconvincing.

The suggestion of procedural error is surprising because Liberty did not, in fact, ask me simply to dismiss Cook's state-law claims on preemption grounds in its motion for summary judgment.  Instead, after briefly observing that Cook's claims were preempted by ERISA, Liberty explicitly assumed that I might treat Cook's misconceived state-law claims as a de facto claim for benefits under ERISA, and then advanced a broader argument that it was entitled to summary judgment on the merits of this claim.  See Memorandum of Law in Support of Defendant's Motion for Summary Judgment, at 21-27.  By explicitly anticipating the procedural course I pursued and seeking such a merits ruling, Liberty consented to my treating Cook's claims as arising under ERISA.  Cf. Erbaugh v. Anthem Blue Cross and Blue Shield, 126 F. Supp. 2d 1079, 1081-82 (S.D. Ohio 2000) (recognizing the inconsistency of removing claims pleaded under state law on grounds of ERISA preemption and then seeking a merits dismissal

of the implicit federal claim because it was misconceived as arising under state law).[1]  Liberty is thus in no position to complain that I improperly adjudicated Cook's claim on its merits.

The suggestion of error is unconvincing because an outright dismissal of Cook's removed claims on preemption grounds without giving her an opportunity to amend her complaint to assert a claim for benefits under ERISA would have been contrary to circuit precedent.  See Fitzgerald v. Codex Corp., 882 F.2d 586, 589-90 (1st Cir. 1989); see also Degnan v. Publicker Industries, Inc., 83 F.3d 27, 30 (1st Cir. 1996) (admonishing that "[c]ourts should not hasten to employ technical rules of pleading to defeat" ERISA's remedial purpose and illustrating with an approving reference to Fitzgerald).

---

[1]  Liberty's consent to my treating Cook's claims as arising under ERISA also can be inferred from (1) its failure to reply, object, or otherwise suggest prejudice when Cook concurred that its state-law claims were subject to ERISA preemption and asked me to regard them as having been asserted under ERISA, see Plaintiff Kathleen Cook's Memorandum of Law in Support of Her Objection to Defendant's Motion for Summary Judgment, at ¶ 69; and (2) its assent to Cook's representation that a granting of Liberty's motion for summary judgment would dispose of the case in toto while a denial of the motion would leave only the issue of damages, see Assented-to Motion to Remove Case From Jury Trial List, at ¶¶ 6-9.

In fairness, and despite what it now says, Liberty's real complaint may be less with my failure to "dismiss" Cook's claims and more with the fact that I accepted Cook's invitation to treat her claims as asserted under ERISA instead of ordering her to file an amended complaint. See Erbaugh, 126 F. Supp. 2d at 1082 (stating that "the prevailing practice is to grant a party whose state-law claims have been removed on the basis of complete preemption leave to filed an amended complaint"); cf. Defendant's Memorandum Regarding Plaintiff's Request for Damages, at 2 n.2. But this argument takes us full circle because, as explained above, Liberty consented to my regarding the complaint as constructively amended to set forth a claim for benefits under ERISA. In any event, with or without such consent, courts frequently follow the procedural course I pursued in order to avoid the costs associated with unnecessary delay and court filings that serve no useful purpose. See, e.g., Doe v. Travelers Ins. Co., 167 F.3d 53, 56 (1st Cir. 1999); Jones v. Aftra Health & Retirement Funds, 2000 WL 249342, at *1 (S.D. N.Y. March 6, 2000); Howard v. Humana Ins. Co., 1999 WL 1005639, at *1 (W.D. Mich. 1999); Neurological Resources, P.C. v. Anthem Ins. Cos., 61 F. Supp. 2d 840, 844 (S.D. Ind. 1999); cf. Fed. R. Civ.

-4-

P. 8(f) (directing courts to construe pleadings so as to do substantial justice); Fed. R. Civ. P. 15(b) (permitting constructive amendments of the pleadings after trial so as to conform the pleadings to the issues tried with the express and implied consent of the parties); Rybarczyk v. TRW, Inc., 235 F.3d 975, 981 n.8 (6th Cir. 2000) (treating claims formally but mistakenly brought under the Internal Revenue Code as having been brought under ERISA § 502, 29 U.S.C. § 1132); Counts v. Kissack Water & Oil Serv., Inc., 986 F.2d 1322, 1324 n.1 (10th Cir. 1993) (similar); Connecticut General Life Ins. Co. v. Universal Ins. Co., 838 F.2d 612, 622 (1st Cir. 1988) (directing that a judgment be entered under a legal theory that was not pleaded).

Even so, I might be open to revisiting the matter if there were any indication that Liberty was prejudiced by my failure to require formal amendment of the complaint.[2] Liberty suggests that it was so prejudiced:

---

[2] It is undisputed that Liberty's contract with the plan obligates it to pay Cook any benefits which are due her under the terms of the plan. Thus, Liberty cannot claim that it was prejudiced by being ordered to pay benefits to Cook that it otherwise had no obligation to pay.

-5-

[T]here is . . . [a] question . . . [as to] whether Liberty would be a proper party to an action for benefits under ERISA. See Everhart v. Allmerica Financial Life Ins. Co., 275 F.3d 751 (9th Cir. 2001) (ERISA action for benefits may only be brought against the plan and, possibly, the plan administrator). Cf. Terry v. Bayer Corp., 145 F.3d 28 (1st Cir. 1998).[3]

------

[3] As noted in Everhart, there is a circuit split as to whether an action for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), may be brought against the plan administrator or must be brought against the plan itself. See 275 F.3d at 754 (collecting cases). The First Circuit has not addressed the matter with precision – compare Terry, 145 F.3d at 34 n.5 (stating that it was declining to decide whether only the plan can be sued) with id. at 36 ("'[T]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan.'") (quoting Garren v. John Hancock Mutual Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997)) – but has without comment addressed the merits of a host of ERISA benefits actions brought only against plan administrators. See, e.g., Larocca v. Borden, Inc., 276 F.3d 22 (1st Cir. 2002); Pari-Fasano v. ITT Hartford Life and Acc. Ins. Co., 230 F.3d 415 (1st Cir. 2000); Doe, 167 F.3d 53; McMahon v. Digital Equip. Corp., 162 F.3d 28 (1st Cir. 1998); Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181 (1st Cir. 1998).

As I explain infra, Liberty has waived any argument that Cook was required to sue the Plan in order to press a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). But even if it had not, I would be strongly inclined toward the position that a plan administrator also is a proper party defendant to such a claim so long as it has the authority to determine and pay benefits (as Liberty clearly does). I am so inclined because I find convincing the analysis set forth in Judge Reinhardt's dissenting opinion in Everhart, 275 F.3d at 757-62, and because I understand the final judgment in this case to operate against Liberty in its capacity as plan administrator -- i.e., in its capacity as the party with the authority to determine and pay benefits under Cook's Plan. So understood, I have difficulty seeing any practical distinction between a

> There is no evidence that Liberty is the plan administrator for the Plan. <u>Cf.</u> 29 U.S.C. § 1002(16) (if a plan administrator is not specifically designated, then the employer is considered the plan administrator). This issue did not come up because Cook never formally moved to amend her "Bill in Equity" to assert claims under ERISA.

Defendant's Memorandum Regarding Plaintiff's Request for Damages, at 2 n.2. But the unexplained premise upon which Liberty's prejudice argument is built – that Liberty had no reason to raise an "improper defendant" argument[4] as part of its summary judgment motion – is faulty.

Simply stated, Liberty could and should have presented any argument that it was not a proper defendant to Cook's implicit ERISA claim in its summary judgment motion. Such an argument would have provided me with an alternative basis for a merits ruling that Liberty was not liable to pay Cook benefits. Because

---

judgment against the Plan and a judgment against Liberty as Plan administrator.

[4] I regard the "improper defendant" argument to which Liberty alludes in its most recent submission as potentially encompassing two sub-arguments: (1) Liberty is not a proper defendant to Cook's ERISA benefits claim because that claim can only be brought against the Plan and not the Plan administrator; and (2) Liberty is not a proper defendant to Cook's ERISA benefits claim even if that claim can be brought against the Plan administrator because Liberty is not the Plan administrator.

Liberty's failure to make an improper defendant argument was not caused by the procedural mechanism I employed, I reject Liberty's suggestion of prejudice. Moreover, to the extent that Liberty's most recent submission can be construed as requesting reconsideration of my summary judgment ruling because Liberty was not a proper defendant to Cook's implicit ERISA claim, I reject the request on grounds of forfeiture. Cf. Arrieta-Gimenez v. Arrieta-Negron, 859 F.2d 1033, 1037 (1st Cir. 1988) (precluding party that failed to make a legal argument in its motion for summary judgment from doing so subsequently).

Liberty's suggestion that it was not the Plan administrator suffers from two additional defects that warrant brief discussion. First, prior to and in its summary judgment motion, Liberty was more than content to litigate this case on the premise that it is the administrator vested with interpretive and decision-making discretion (and thus entitled to deference, see, e.g., Pari-Fasano, 230 F.3d at 418) with respect to Cook's Plan.[5]

---

[5] See Report of Parties' Planning Meeting, Fed. R. Civ. P. 26(f), LR 26.1(f), at 2 ("Because plaintiff seeks benefits pursuant to an employee benefit plan, defendant asserts that discovery should be limited to establishing the record before the administrator at the time the decision was made regarding her continued eligibility for such benefits.") (emphasis supplied);

It would be inequitable to permit Liberty to take a contrary position as to its status following an adverse disposition of its summary judgment motion.  Cf. Fashion House Inc. v. K mart Corp., 892 F.2d 1076, 1095 (1st Cir. 1989) (precluding party that had successfully argued for the application of federal law to an issue before the district court from asserting on appeal that state law should govern the issue).  Second, notwithstanding Liberty's argument that "there is no evidence" that it is the Plan administrator and notwithstanding 29 U.S.C. § 1002(16), the evidence in this case compels the conclusion that Liberty is, at

---

Affidavit of [Liberty Employee] Paula Colello, at ¶ 2 ("I am the Litigation/Claims Referral Manager for Liberty in Tampa, Florida. Among other duties, I oversee the administration of claims for benefits under the Lockheed Sanders Long Term Disability Plan.") (emphasis supplied); Defendant's Memorandum of Law in Support of Summary Judgment, at 2 ("Liberty administers benefit claims for the Plan and, as such, is responsible for making determinations as to eligibility for and continued entitlement to Plan benefits."); id. at 22, 22 n.9, and 23 (invoking cases holding that a plan administrator's benefits decision should stand unless arbitrary and capricious, arguing that these cases directly support the proposition that Liberty's decision to terminate Cook's benefits should stand unless arbitrary or capricious, and thereby holding Liberty out as the Plan administrator).
     I note also that Liberty did not reply to, respond to, or otherwise object to Cook's assertion that Liberty was the plan administrator.  See Memorandum of Law in Support of Cook's Objection to Defendant's Motion for Summary Judgment, at 1 & ¶¶ 7, 77.

the very least, the <u>de facto</u> Plan administrator.  <u>See</u> <u>Law v.</u>

<u>Ernst & Young</u>, 956 F.2d 364, 373-74 (1st Cir. 1992); <u>see also</u>

<u>Estate of Bratton v. Nat'l Union Fire Ins. Co.</u>, 215 F.3d 516, 522

n.7 (5th Cir. 2000); <u>see generally</u> <u>Jones v. UOP</u>, 16 F.3d 141, 145

(7th Cir. 1994) (detailing a circuit split on whether a non-

administrator can be deemed a <u>de facto</u> plan administrator).  As

the only entity with authority to determine and pay benefits

under the Plan, Liberty is the entity which "administers" the

Plan under any conventional understanding of that term.  In the

First Circuit, this subjects it to plan administrator liabilities

under ERISA.  <u>See</u> <u>Law</u>, 956 F.2d at 373-74.

In sum, the procedural issues raised by Liberty's submission

do not cause me to question to reconsider any of my previous

orders in this case.

## 2.  Benefits Due

In my February 11, 2002 order, I rejected Liberty's call for

a remand and stated that Liberty must pay Cook the benefits due

under the Plan, noting that Liberty can seek to terminate Cook's

benefits in the future "if [it] develops evidence suggesting that

Cook is no longer disabled."  In its most recent submission,

Liberty persists in asserting that a remand is warranted, arguing

that I did not determine that its decision was necessarily wrong. In making this argument, Liberty highlights the underlined statement from the following passage in my January 15, 2002 memorandum and order: "[A]s Liberty suggests, it may well have had adequate grounds . . . to terminate Cook's benefits on or before October 31, 1998. I have no occasion here, however, to review decisions that Liberty never made." Id. at 15 (emphasis supplied). Liberty misconstrues the meaning of this statement and passage.

I prefaced the passage with the phrase "[a]s Liberty suggests" because I intended it to respond to an argument advanced by Liberty in its summary judgment motion and quoted in the January 15, 2002 memorandum and order: that it had reasonable grounds to conclude that Cook had not provided "'sufficient proof that she continued to be incapable of performing the material and substantial duties of any occupation for which she was reasonably fitted.'" Id. at 13-14 (quoting Liberty's Memorandum of Law in Support of Its Motion for Summary Judgment, at 24). Specifically, I intended the passage to convey that, while Liberty might have developed evidence that Cook was not disabled within the meaning of her policy and had its decision terminating

her benefits pass muster under ERISA's generous standard of review, this was utterly beside the point because the administrative record did not contain such evidence. For purposes of my analysis, only three (related) facts mattered: (1) Liberty initially found Cook to be disabled and never suggested that its initial decision was erroneous; (2) the relevant documentation contained in the administrative record (as opposed to the non-probative "evidence" Liberty manufactured from Dr. Blackwood's error) did not suggest any material change in Cook's condition at or around the time Liberty terminated her benefits; and (3) Liberty never offered a reasoned explanation as to why the administrative record failed to demonstrate that Cook remained disabled. In short, given Liberty's initial position that Cook was disabled, the only rational decision that it could have reached on the administrative record it developed was that Cook's disability benefits should continue.

With this clarification as backdrop, I reiterate my denial of Liberty's request for a remand so that it might consider additional grounds for terminating Cook's benefits as of October 31, 1998, or at some point between October 31, 1998 and now. Three factors animate this decision. First, Liberty has never

taken the position that, despite its payment of benefits, Cook's documentation was insufficient to establish that she was disabled prior to October 31, 1998 – an argument that it seemingly would be obliged to make if it were to rescind her benefits as of October 31, 1998 based on grounds different from its initial recision of benefits. Second, although the relevant cases do not speak with one voice, the better reasoned cases do not require remand where, as here, the claimant was receiving benefits and had her benefits arbitrarily terminated without any record evidence supporting the termination.[6] Third, I am not at all impressed by Liberty's argument that Cook had a "continuing duty to demonstrate that she was entitled to benefits" during the pendency of legal proceedings challenging Liberty's termination decision. Defendant's Memorandum Regarding Plaintiff's Request for Damages, at 4 n.6. This case has been in litigation for the past several years because of Liberty's arbitrary and capricious decision to terminate Cook's benefits. It would be inequitable

---

[6] See, e.g., Levinson v. Reliance Standard Life Ins. Co., 245 F.3d 1321, 1328-30 (11th Cir. 2001); Quinn v. Blue Cross & Blue Shield Ass'n, 161 F.3d 472, 477-78 (7th Cir. 1998) (collecting cases to this effect and distinguishing them from the case before it); Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 697-98 (7th Cir. 1992).

under these circumstances to permit Liberty to terminate Cook's benefits as of some date after October 31, 1998 but prior to now on grounds that Cook cannot now prove that she was disabled at all times during the past three-plus years.[7]

The parties are in agreement that Cook is entitled to $1,322.96 for each month since November 1998 (less the $22,165.56 Cook admittedly owes Liberty)[8] should I award her benefits for the period between the termination of benefits and the final judgment. See id. at 3 n.4. The final judgment shall utilize this figure and shall direct that the award of monthly benefits be on-going. Also, Cook asserts without contradiction from Liberty an entitlement to $554.74 in unpaid pension contributions. The final judgment shall include these benefits as well. Of course, as I stated previously, nothing in the judgment

_____

[7] An arbitrary termination of disability benefits to a disabled claimant could well starve the claimant of the resources necessary to generate evidence of continuing disability while claimant challenges the termination proceeding.

[8] Because Cook has never contested Liberty's entitlement to offset $22,165.56 from the benefits she is due, I deny Liberty's request that I enter judgment on and award it attorneys' fees and costs with respect its counterclaim against Cook for these monies. The final judgment will reflect Liberty's entitlement to this offset.

precludes Liberty from terminating Cook's benefits in the future should it reasonably determine that Cook can no longer demonstrate that she is disabled.

## 3.  __Attorney's Fees, Costs, and Prejudgment Interest__

Because Cook has prevailed on her ERISA claim, I have discretion to award her attorney's fees and costs.  See 29 U.S.C. § 1132(g)(1); Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220 (1st Cir. 1996).  So too may I award her prejudgment interest.  See Cottrill, 100 F.3d at 223-25.

Upon consideration of the parties' submissions and the factors that channel my discretion in awarding fees and costs, see id. at 225, I shall award Cook attorney's fees and costs, but only those fees and costs demonstrably incurred in connection with (1) Cook's pursuit of administrative remedies with Liberty; and (2) Cook's preparation and filing of her objection to Liberty's motion for summary judgment and memorandum in support thereof.[9]  I shall employ the lodestar approach in calculating

---

[9] My decision to award Cook a portion of her fees and costs is prompted by Liberty's willful and unseemly reliance on Dr. Blackwood's error in terminating Cook's benefits, my desire to deter such decision-making in the future, the lack of merit to Liberty's litigation position, and Liberty's ability to pay the fees and costs I shall award.  See id. at 225-27.  My decision to

the fee award, multiplying an appropriate hourly rate for the attorney who did the work in question by the number of hours s/he reasonably expended on the task. See Lain v. UNUM Life Ins. Co., 279 F.3d 337, 348 (5th Cir. 2002); Brytus v. Spang & Co., 203 F.3d 238, 242 (3d Cir. 2000). In an effort to make Cook whole, I also shall award Cook prejudgment interest at the federal rate, see id. at 224-25, but only from April 2000 onward because Cook has not sought to respond to Liberty's argument that it was entitled to withhold benefits through that time in order to recoup the $22,165.56 that it was owed. See Defendant's Memorandum Regarding Plaintiff's Request for Damages, at 8 n.12.

## 4. Conclusion

With this memorandum and order to guide them, I instruct the parties to confer once again in an effort to submit a jointly-proposed final judgment setting forth (1) the specific benefits

---

limit the recoverable fees and costs to those Cook incurred in her pursuit of administrative remedies and objection to Liberty's motion for summary judgment is prompted by my view that Cook should not be compensated for her misconceived venture into state court and for her other submissions in this case, particularly her inadequately argued and supported Brief in Support of an Award of Benefits, Interest, Unpaid Pension Contributions, Costs, Attorney's Fees, and Other Relief [document no. 21] and Motion for Entry of Judgment [document no. 22].

-16-

owed to Cook with prejudgment interest factored in through the date of the proposed judgment, (2) Cook's entitlement to on-going disability benefits from the date of the proposed judgment, and (3) the amount of fees and costs to which Cook is entitled. The submission of such a judgment shall in no way preclude the parties from appealing any portion of my January 15, 2002 memorandum and order, my February 11, 2002 order, or this memorandum and order with which they disagree.

If the parties are unable to reach agreement as to a proposed final judgment, the following procedure should be employed. Cook should file a motion for entry of judgment with a memorandum specifying the points of disagreement and seeking an award of the specific benefits, fees, or costs to which, despite Liberty's disagreement, she believes herself entitled under this memorandum and order. Cook should attach to her motion (1) specific and contemporaneously-generated records supporting her claim, (2) affidavit(s) from counsel attesting to the accuracy of the rates sought and the contemporaneous nature of the records submitted (if the dispute is over attorney's fees), and (3) a proposed final judgment in the form outlined in the preceding

paragraph. Liberty should then file a detailed objection responding to Cook's motion. Liberty should attach to its objection a proposed final judgment in the form outlined in the preceding paragraph.

If the parties are able to reach agreement as to a jointly-proposed final judgment, they should file it on or before Friday, April 19, 2002. The jointly submitted proposed final judgment should be dated May 1, 2002 and should set forth sums certain accurate through that date. If the parties are unable to reach agreement as to a jointly-proposed final judgment, Cook should file her motion for entry of judgment on or before April 12, 2002, and Liberty should filed its objection thereto on or before April 19, 2002. The proposed final judgments submitted in connection with any such motion and objection should be dated May 1, 2002 and should set forth sums certain accurate through that date.

Cook's motion for entry of judgment (doc. no. 22) is denied.

SO ORDERED.

_____
Paul Barbadoro
Chief Judge

March 29, 2002

-18-

cc:  Ronald E. Cook, Esq.
     William D. Pandolph, Esq.